MARTIN V. B. SMITH, Survivor, &c. Appellant, *against* RUDOLPH G. SALOMON *et al.* Respondent.

(Decided June 4th, 1877.)

Where to a complaint for a balance of the contract price of goods sold and delivered, the answer confesses the cause of action and sets up the defense that plaintiffs under a composition agreement, had agreed to receive and had received 50 per cent. as full payment, the plaintiffs may prove in avoidance of the composition agreement, that it was fraudulently procured by the defendants.

Smith v. Salomon.

When a creditor's signature to a composition agreement has been obtained by fraud on the part of the debtor, the creditor may, upon the discovery of the fraud, although he has received under the composition agreement the amount therein specified to be in full payment of his debt, maintain an action on the original cause of action for the unpaid balance, without first bringing an equitable action to set aside the composition agreement as fraudulent, and without having first restored or offered to restore the amount received under such agreement.

Evidence that the defendant, to induce plaintiff to sign the composition agreement, had represented to him that the assets of the firm would not pay more than 50 cents on the dollar ; that in fact a surplus remained after that payment, that the defendant had confessed that he had secreted goods and kept two sets of books, one of which was afterwards destroyed, is sufficient to raise the question for the jury of whether or not the composition agreement was obtained from plaintiff by fraud. Per CHARLES P. DALY, Ch. J.

APPEAL from a judgment of this court entered upon an order dismissing the complaint made at a trial before Judge ROBINSON and a jury.

This action was brought by Smith, the surviving partner of E. A. Smith & Brothers, against the defendants, who composed the firm of Salomon & Moral, to recover an unpaid balance of the price of goods sold and delivered.

The answer of the defendants admitted the sale, delivery and price, and set up as a defense that plaintiff's firm, with other creditors of the defendants, had signed an agreement of composition, whereby plaintiff's firm agreed to receive, in full payment of the price of the goods, the promissory notes of the defendant's firm, indorsed by the father of one of the firm for 50 cents on the dollar ; that plaintiffs had received said notes, and that the notes had been paid before the commencement of the action.

At the trial the composition agreement, the giving of the notes, and their payment were proven. Evidence was then given on behalf of the plaintiff tending to show that the plaintiff's firm had been induced by fraud to sign the composition agreement. After this evidence had been introduced a motion was made to dismiss the complaint, which was granted on the ground that the plaintiff had misconceived his remedy, and that his action should have been to set aside the composition agreement or for damages for the deceit.

*W. T. B. Milliken*, for appellant.

*Blumenstiel & Ascher*, for respondent.

CHARLES P. DALY, Chief Justice.—The plaintiffs signed the composition deed, by which they agreed to take fifty cents on the dollar, to be secured by the defendant's promissory notes, indorsed by David Moral, the father of one of the defendants. The defendant had previously made an assignment, for the benefit of creditors, to one George Rothstein, and to carry into effect the composition deed, an instrument was entered into by the defendants, by Rothstein, the assignee, and by David Moral, the indorser of the composition notes, by which all the defendant's property was assigned to David Moral, to indemnify him for indorsing the notes; he agreeing by the instrument to sell the property and apply the proceeds to the payment of the composition notes, after the payment of certain sums which were provided for in the instrument, for legal expenses, and for the services and expenses previously incurred by Rothstein, the assignee. The instrument declared that it was entered into with the consent of the defendant's creditors, and under it, David Moral paid the plaintiff the composition notes received by him, and after discharging the trust, there was, it would seem, a surplus in the hands of David Moral. It further appeared that Salomon, the defendant, commenced an action to compel him to pay and deliver to him any assets or property remaining in his hands, and a decree to that effect was obtained, but with which Moral has been unable to comply, the creditors of the defendant having attached the property in his hands.

The present action was brought by the plaintiffs to recover what was due on the original debt, upon the ground that the composition was fraudulent on the part of the defendants, and the composition deed null and void for that reason as respects the plaintiff's firm and the debt due to it.

The plaintiff signed the composition deed, upon a representation made to him by Salomon, and by David Moral, the

subsequent trustee, that the defendant's assets would pay only fifty cents upon the dollar of their indebtedness, which representation the plaintiff claimed and showed in this action to be false and fraudulent, it appearing that Salomon had a double set of books, one set of which he afterwards destroyed, and that he had stowed away a part of the partnership property in a loft with intent to keep it to himself. It also appeared that after the settlement, and after David Moral, the trustee, took possession under it, he obtained possession of certain goods which defendants had shipped to Germany and Philadelphia, and four or five weeks after the settlement he learned from Salomon, as he said, to his astonishment, that he had two sets of books, which he declared, if he had known, he would have had nothing to do with the settlement, as he " was of the impression that all things went honest and straight," and Salomon also told him that he had stock stowed away on the top loft, as the witness supposed, to keep it for himself, and which Moral, the witness, subsequently got into his hands as trustee.

The plaintiff learned of the fraud two or three weeks before the commencement of this suit. The composition notes he had received were not then fully paid, but were paid, it would seem, before the commencement of this suit, and the general objection was taken, that the plaintiff's firm, having thus availed themselves of the composition, and received the benefit of the payment of the notes secured by the endorsement of David Moral, they could not disaffirm the composition on the ground of fraud, without restoring what they had received. It was insisted that the plaintiff, the surviving partner, could not recover in an action brought for the balance of the debt, which, it is claimed, became merged in the composition; that he had either to bring an action in equity, to set aside the composition deed, or bring an action for damages. The judge non-suited him on the ground that he had entirely misconceived his action, and as I infer from the judge's language, he thought the plaintiff's only remedy was by a bill in equity to set aside the composition for fraud, or to sue for the deceit; that he could not sue for the balance

of the debt, upon the ground that the composition was fraudulent.

I do not see why the plaintiff was not entitled to maintain this action. The composition deed may have been fraudulent as respects him, and not as to the other creditors. If no such representation was made to them, the composition agreement as to them would be valid, but the representation made to the plaintiff's firm was a material one, and if false, the composition as respects that firm was fraudulent. It is not the case of a party repudiating a contract for fraud, and bringing an action to recover damages for the injury he has sustained, to maintain which, he must, before the action is brought, restore, or offer to restore, what he has received under the contract. It is an action brought to enforce a contract, and in which a composition to receive fifty per cent. in discharge of the claim is set up by way of answer, and is met by the objection, that the creditor was induced by fraudulent representations on the part of the debtor to sign the deed of composition, and that consequently it is fraudulent and void as against him. It does not come, therefore, within the class of cases upon which the respondent relies. The plaintiff has received nothing that he can be required to give up. He has only been paid one-half his claim, and paid out of the assets of his debtor, in the hands of a trustee who has or will have a surplus after the payment of all the composition notes. I can see no reason why he should be put to an equitable action. He is seeking no remedy as against the trustee, or as against the assigned property. He is merely seeking in this action to enforce the payment of the whole debt, upon the ground that the defendants have never been discharged from it, they having by false and fraudulent representations induced the plaintiff to sign the composition deed. As between the plaintiff and the defendants, this question of fraud may as well be passed upon in this action as in any other. The court has all the necessary parties before it that will or can be affected by the judgment, whether it is rendered for the plaintiff, or for the defendants, and I see no reason why the plaintiff should be turned over to an action for deceit,

or any other form of action, but the one brought to determine whether the defendants are, as between them and the plaintiff, discharged from the payment of the residue of the debt. In other words, whether the composition deed, as respects the residue of the debt, is or is not binding upon the plaintiff. That issue can be fully tried in this action, and fully disposed of without affecting any other parties to the composition deed.

If there was fraud on the part of the defendants in procuring the signature of the plaintiff's firm, and the composition is on that account void, as respects that firm, the more direct course is the one the plaintiff adopted, to sue for the residue of the debt, instead of bringing an action for damages, or an action in equity to be relieved from the composition.

If the representation made by a debtor to a creditor respecting his property is in any material respect untrue, the misrepresentation will vacate the compromise as to him, and if a release has been signed, a court of equity will vacate it. (*Irving* v. *Humphrey*, Hopk. 286.)

It is not necessary, however, especially under our present system, that the plaintiff should resort to an equitable remedy. The rights of the parties can be as fully determined in an action against the debtor to recover the residue of the debt, as it would be in an action by the plaintiff to set aside the composition deed, as respects his claim. If he desired to reach the debtor's property, as in *Irving* v. *Humphrey* (*supra*), and have it applied to the payment of the residue of his debt, he would have to proceed in equity to obtain a full account of the debtor's property, and if it exceeded the amount necessary to pay the composition, to ask that the residue might be applied to the full payment of his debt. No such relief, however, is sought in this action. The plaintiff merely asks a judgment against the defendants for what remains due of the original debt. The composition notes, as appears by the testimony of David Moral, the trustee, have all been paid by funds in his possession, and it appears that there will be a surplus in his hands, to which the defendants have become entitled, and which, in an action between them

and the trustee, it has been decreed is to be paid over to them by the trustee. I see no reason, therefore, if the composition was fraudulent as against the plaintiff's firm, why the plaintiff should not have judgment against the defendants in this action for what remains due of the original debt.

If a creditor compounds with his debtor under a false impression as to the extent of the debtor's estate, in which the debtor knowingly leaves him, the creditor is not estopped from suing for the balance of the debt (per Tindall, J., in *Vine* v. *Mitchell*, 1 M. & Rob. 337); and where a debtor represents to a creditor that if he will assent to the composition all the others will do the same, and the creditor agrees to it, the composition will not be binding upon him, if the representation made to him were untrue. (*Cooling* v. *Noyes*, 6 T. R. 263; *Reay* v. *Richardson*, 2 C. M. & R. 422; 5 Tyr. 931; 1 Gale, 219; *Lewis* v. *Jones*, 8 D. & R. 567; 4 B. & C. 506.)

In *Jackson* v. *Myers* (18 Johns. 425) an action of eject-ment was brought to recover a house and land sold under an execution, and which at the time of the sale was in posses-sion of the defendants under a deed from the judgment debtor, which was fraudulent and void as against creditors. The deed being interposed as a defense to the action, the plaintiff was allowed to show that it was fraudulent and void, and the plaintiff recovered. And in *Fox* v. *Hills* (1 Conn. R. 295) it was held that such a deed, irrespective of the statute, was void at common law. I do not see why, upon the same principle, the plaintiff could not show in this action that the composition deed was fraudulent and void, as against him and his firm.

In *Russell* v. *Rogers* (15 Wend. 351) the debtor assigned to his creditor a judgment with the usual covenant. He afterwards fraudulently received payment of the judgment, and discharged the judgment debtor. The creditor, in igno-rance of what the debtor had done, united with the other creditors in a general release of all claims and demands against the debtor, he having executed a composition deed to a trustee for the benefit of all his creditors. The creditor

upon learning the fraud that had been practised upon him, brought an action against the debtor for a breach of the covenant in the assignment of the judgment, to which the defendant demurred; but it was held that the action could be maintained; that by *reason of the fraud*, the release and composition deed did not operate to discharge the debtor from the covenant in the assignment.

Courts of law and of equity have concurrent jurisdiction to relieve against fraud (*Bright* v. *Eynon*, 1 Burr. 396); the distinction being that in courts of law it must be proved, and that in equity it may be presumed. (*Jackson* v. *King*, 4 Cow. 220; *Champion* v. *White*, 5 id. 509.) The plaintiff was not obliged to seek relief in equity, because the composition deed or release was sealed, the consideration being open to inquiry and examination to the same extent as if it were a contract by parol. (*Wilson* v. *Baptist, &c. Co.* 10 Barb. 312, 313.)

There may possibly be some doubt whether the evidence proved that Salomon fraudulently represented the value of the firm's assets to be less than it actually was, but I think there was sufficient to make it a question for the jury. The material circumstances were, Salomon keeping a double set of books. The trustee saw them four or five weeks after the compromise was signed. He was astonished, and told Salomon that if he had known that circumstance he would not have made any settlement, by which I understood him to mean that he would have had nothing to do with the compromise and settlement. He was also informed of the fact by the book-keeper; and he further testified that Salomon told him that he had taken these books away and destroyed them. The fact that a quantity of goods was sent by Salomon to his father in Hamburg, of which the trustee knew nothing when the compromise was signed, and which it appears the father gave up afterwards, upon being required by the creditors to do so; that after these books were taken away and destroyed, Salomon had stock stowed away on a top loft; that he told the trustee that he had stowed it away and did not know anything of it, leaving the trustee

under the impression that his object in doing so was to keep it for himself. The trustee was asked whether the stock thus stowed away had been exhibited to the creditors, and he answered that it had not, to his knowledge; and the fact that when the trustee left there was stock remaining of the value of $5,000 or more, as well as outstanding debts, and that he had about $2,400 in cash and $842 in notes, amounting together to $3,242, which amount he had then to pay as a part of the settlement notes, so that there was then, it would appear, a surplus of $5,000, or more, in stock, together with outstanding debts, the amount or value of which is not stated.

It is difficult, in most cases, to prove fraud directly. It is generally shown by circumstances, and the circumstances here were, in my judgment, sufficient to entitle the jury to pass upon the question whether the representation of the value of the assets by Salomon to the plaintiff's firm was false and fraudulent or not. It does not appear from anything in the case that the plaintiff had rested; but, on the contrary, that the judge told the defendant's counsel that he would hear him upon a motion for a non-suit; and the motion for a non-suit which he made was upon the grounds which I have already stated; that the plaintiff could not sue on the original cause of action; that it was merged in the composition deed; that before the plaintiff could recover in an action for the balance of the debt, he would have to bring an action in equity to have the composition deed set aside, or else bring an action for damages, to which the plaintiff's counsel answered, that the only ground upon which they expected to maintain this action was that the composition deed was obtained by fraud, whereupon the court remarked that it was a question whether his remedy was for the balance of the debt, or by a bill in equity to set aside and vacate the composition for fraud, or to sue for deceit. To which the defendant's counsel responded that the action should have been upon the alleged fraud for damages or in equity, to set aside the composition deed, and that the plaintiff could not avoid the contract for the composition, or rescind that contract,

Smith v. Salomon.

without first giving up all that he had received under it. Upon which the judge then said that the plaintiff had entirely misconceived his action, and that he must dismiss the complaint.

It may be, for all that appears in the case, that the plaintiff was prepared to give further evidence respecting the fraud; that he had not rested; and it was certainly not to be expected, after the court had informed him that the complaint would be dismissed, because he had misconceived his action, that he should offer to give additional evidence respecting the fraud, or should ask to go to the jury on that question, when the judge had told him, in effect, that it would be of no avail, as he would dismiss his complaint, he having mistaken the form of his remedy.

It would, in my judgment, under these circumstances, be unjust to deny the plaintiff a new trial and affirm the judgment. I think the proper course is to grant a new trial, of which the defendants have no right to complain, as it was no part of their motion in the court below, that the complaint should be dismissed, because there was no evidence of fraud to go to the jury. They relied for their defense upon a totally different ground, and one which, I think, I have shown upon authority to have constituted no answer to the action.

LARREMORE, J., concurred.

JOSEPH F. DALY, J., dissented on the ground that there was no evidence on which the question of fraud could be submitted to the jury.

Judgment reversed and new trial ordered.