ALBERT A. COBB & another *vs.* JAMES TIRRELL & others.

Suffolk. Jan. 10. — April 8, 1884. DEVENS & HOLMES, JJ., absent.

If a debtor enters into an indenture with his creditors, which provides that all creditors are to become parties to the indenture, and by which he agrees to pay them, by promissory notes, a certain percentage of their respective claims, and they agree to accept this composition in full satisfaction and discharge of their claims, and the debtor, in order to induce some of his creditors to sign the indenture, pays them a larger percentage than that stipulated therein, without the knowledge of the other creditors who have signed it, one of the latter may maintain an action upon his claim against the debtor, without first returning the composition notes received by him, or their proceeds.

COLBURN, J. This action is brought, by writ dated December 22, 1879, upon a promissory note for $2167.54, dated November 27, 1878, made by the defendants, payable to their own order, and indorsed by them to the plaintiffs. The plaintiffs give the defendants credit, in the declaration, for three promissory notes made by them, payable to their own order and indorsed by them and by Fogg Brothers and Company, each dated May 1, 1879, one on six months for $254.18, one on nine months for $254.19, and one on twelve months for $254.19, which the plaintiffs allege they received of the defendants in part payment of the note for $2167.54.

The defendants in their answer allege that the note has been settled and paid, and the defendants released from any liability thereon, and deny that the plaintiffs have any title to the note, or any interest in it or its proceeds.

It appeared at the trial, that, under date of May 1, 1879, the defendants entered into an indenture with their creditors, to which the plaintiffs were parties, by which they agreed to pay their creditors thirty-five per cent of their respective claims, made up as cash on May 1, 1879, by notes of the defendants, satisfactorily indorsed, each for one third of the thirty-five per cent, payable in six, nine, and twelve months from May 1, 1879, without interest; and the creditors agreed to accept this composition in full satisfaction and discharge of their respective claims, and that the defendants should have the right, without interference of the creditors, to dispose of all their assets, at their own pleasure, towards the satisfaction of the thirty-five per cent,

and that they would execute any instruments necessary to re-invest in the defendants any property theretofore conveyed by them for the benefit of their creditors; all creditors to become parties to the indenture.

On September 23, 1879, one Kyle, an agent or clerk of the defendants, and who had originally brought the composition agreement to the plaintiffs and procured their signature to it, came to the plaintiffs, and informed them that he had come prepared to carry out the composition agreement; that all the creditors had signed it; and that no one had received more than the thirty-five per cent. The plaintiffs gave up to Kyle their note, and received from him the three notes for which they have given the defendants credit. At the same time, at Kyle's re-quest, he saying that it was a necessary formality in order to carry out the arrangement, the plaintiffs executed an agreement, dated August 9, 1879, by which the creditors of the defendants, (reciting that they were creditors, for whose benefit the defend-ants had made an assignment of their property, dated March 26, 1879, to James R. Plumb,) in consideration of the payment of thirty-five per cent of their respective claims by John S. Fogg, sold and assigned to him their claims against the defendants. The plaintiffs testified that they did not suppose that they were selling their note to Fogg, but supposed that they were trans-ferring it to him as agent for the defendants, and that he held their assets.

John S. Fogg was father-in-law of one of the defendants, and was the principal partner in the firm of Fogg Brothers and Com-pany, and the indorsements of the composition notes were made in the firm name, as that was better known in the market; but all payments made by that firm were made on account of John S. Fogg, and charged to him.

On March 26, 1879, the defendants had assigned all their property, real and personal, which was mostly in New York, though they resided in this State, to James R. Plumb, under the laws of New York, in trust for the benefit of all their creditors. By an indenture, dated August 9, 1879, between the defendants Fogg and Plumb, but not executed until some time in Septem-ber, after the claims against the defendants had been taken up, reciting that the creditors of the defendants had assigned

all their claims to Fogg by an assignment dated August 9, 1879, so that Fogg was their only creditor, Plumb conveyed to Fogg all the property of every description he had received from the defendants, and the defendants and Fogg released and discharged him from all claims and demands.

By an agreement, dated August 9, 1879, between Fogg and the defendants, Fogg recites that he has agreed to settle up the debts and liabilities of the defendants under a composition with their creditors, and has received from Plumb and the defendants all their assets, and has received an assignment of all claims against them. He agrees that all the partnership personal property shall be sold by the defendants, as his agents, for his benefit; and, after he has been fully repaid for all sums paid out by him, and for his services, he will transfer any surplus of the assets that may remain to such person as the defendants may in writing direct, and will release them from all claims he may hold as assignee of the creditors.

It appeared that some of the creditors refused to sign the composition agreement of May 1, 1879, unless more than thirty-five per cent of their claims was paid to them; and that, in some instances, a larger percentage was paid by the defendants and Fogg. The plaintiffs had no knowledge of any of the arrangements made between Fogg, Plumb, and the defendants, but they had been informed, before they signed the composition agreement, of the assignment to Plumb.

When the plaintiffs learned that some of the creditors had received more than the thirty-five per cent of their claims, they brought this suit.

At the defendants' request, the judge ruled that, as the plaintiffs had not returned, or offered to return, the composition notes, or any of them, before or after bringing this action, they were not entitled to recover; and, upon that ground, directed a verdict for the defendants. The only question raised in the case is as to the correctness of this ruling.

The plaintiffs, in legal effect, by the indenture of May 1, 1879, agreed with the defendants and each of the other creditors of the defendants that, upon payment of thirty-five per cent of their debt, they would release the defendants from the balance, provided no creditor received more than thirty-five per

cent of his claim. The payment of thirty-five per cent was a payment upon the plaintiffs' claim, and was to be a payment in full, provided the terms of the composition were complied with. The consideration for this agreement was not the payment of thirty-five per cent of the plaintiffs' claim. That would not be a good consideration for the release of the balance. It was the mutual stipulation of each creditor with the others and with the defendants that constituted the consideration for the agreement. *Perkins* v. *Lockwood*, 100 Mass. 249. In *Mallalieu* v. *Hodgson*, 16 Q. B. 689, 711, Mr. Justice Erle says: "Each creditor consents to lose part of his debt in consideration that the others do the same; and each creditor may be considered to stipulate with the others for a release from them to the defendants, in consideration of the release by him."

The payment of more than thirty-five per cent to some of the creditors, without the knowledge of the plaintiffs, was a fraud upon them; and, upon its discovery, they had the right to avoid the agreement for compromise, and collect the balance of their debt. *Partridge* v. *Messer*, 14 Gray, 180, and cases cited. In order to do this, it was not necessary that they should return the composition notes, or their proceeds. These notes were not the consideration of the composition agreement. The notes only paid a part of what was justly due the plaintiffs. The payment is to be referred to the original indebtedness, and not to the contract which has been avoided. *Stuart* v. *Blum*, 28 Penn. St. 225.

This is not the case of a party repudiating a contract for fraud, and bringing an action to recover for the injury he has sustained, in which case it would be necessary that he should restore or tender what he had received under the contract. The action is brought on the original note, to which the composition agreement is set up in defence, and the plaintiffs reply that that agreement is void for fraud. *Pierce* v. *Wood*, 23 N. H. 519, 534. *Hefter* v. *Cahn*, 73 Ill. 296. *Stuart* v. *Blum*, *ubi supra*. *Smith* v. *Salomon*, 7 Daly, 216.

The defendants retained the full control of all their assets, and made such arrangements with the indorsers of the composition notes as they chose. There was no privity between the plaintiffs and the indorsers in reference to the composition. It

appears, in fact, that the notes were paid from the assets of the defendants, or the money advanced to pay them, secured by those assets. We, of course, decide only the question raised between the plaintiffs and the defendants, but no question which may arise between the plaintiffs and John S. Fogg.

We are of opinion that the ruling of the court was wrong.

*Verdict set aside ; case to stand for trial.*

*R. M. Morse, Jr. & H. L. Harding*, for the plaintiffs.

*E. Avery*, ( *G. M. Hobbs* with him,) for the defendants.