ALBERT A. COBB & another *vs.* JOHN S. FOGG & others.

Suffolk.    March 23, 24, 1896. — June 19, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Equity Practice — Objections to Master's Report — Lateness of Defence — Abatement of Suit by Death — Former Judgment as Bar — Promissory Note — Composition Settlement — Principal and Agent — Restoration of Status quo — Evidence.*

If a draft òf the report of a master to whom a suit in equity has been referred is furnished to the defendant's counsel, and, after more than five days, a hearing is had and amendments are made at their suggestion, and no objections are filed or offered for filing at any time, and the point that the master did not allow the defendant an opportunity to file objections is not taken until the hearing before a single justice of this court, several months after the filing of the report, of which the defendant.had notice, he will be deemed to have waived any objections to the report.

The objection of multifariousness, if not set up in the answers to a bill in equity by the indorsee against the holder and the maker of a promissory note, to compel the holder to deliver up the note and to obtain a decree against the maker for payment of the balance due on it, and not taken until the hearing before a master to whom the suit was referred, several years after the filing of the bill and after an action at law on the note had been decided in the defendant's favor, and when the statute of limitations would have been a bar to a new action on the note, comes too late.

A suit in equity, to compel the delivery by A. of a promissory note made by a firm of which B. was a member, and to obtain a decree against the makers for payment of the balance due on it, is not abated by the death of B.

The judgment in an action at law upon a promissory note, by the indorsee against the maker, not rendered upon the merits, but upon the ground that the plaintiff did not have possession of the note and his right to it as against the holder could not be tried in that action, is not a bar to a suit in equity by the indorsee against the holder and the maker, to compel the holder to deliver up the note and to obtain a decree against the maker for payment of the balance due on it; and the pendency of that action does not operate to abate the suit in equity.

A firm which had failed attempted to effect a compromise with its creditors, and an agreement, by the terms of which the creditors were to accept thirty-five per cent in full satisfaction of their claims, to be paid by notes satisfactorily indorsed, and all creditors were to become parties thereto, was signed by many, but not all, of the creditors, including A. Thereupon the firm executed an agreement with B., a creditor, who by its terms was to settle the liabilities of the firm and its members "under a composition with their creditors," by selling the partnership property and reimbursing himself from the proceeds for all payments made by him for which he should become liable "under the terms of the composition." B. took an assignment of all the claims against the firm, for some of which he paid more than thirty-five per cent, indorsed and delivered to some of the creditors, including A., the same notes which had been prepared to be indorsed

under the composition agreement, managed and disposed of the property, reimbursed himself, transferred the balance in accordance with the agreement, and delivered up to the firm all the claims which had been assigned to him, except the promissory note which constituted A.'s claim. The assignment executed by the creditors recited that they, " in consideration of thirty-five cents on the dollar of the said indebtedness of said firm to us respectively paid by " B., " hereby sell and assign to " B. all claims against the firm. *Held,* on a bill in equity by A. against B. and the members of the firm, to compel B. to deliver up the note and to obtain a decree against the firm for payment of the balance due on it, that the facts warranted a finding that the transaction by which A. surrendered his note was not a sale by him to B., but was a part of a composition settlement; and that the agreement between B. and the firm was competent evidence against B.

A firm which had failed attempted to effect a composition with its creditors: and C., who had been in its employ, obtained signatures to a paper circulated for that purpose. Afterwards the proposed composition was abandoned, and an agreement was made between the firm and B., one of its creditors, by which he took an assignment of all claims against the firm, indorsed and delivered notes of the firm in payment, and settled the affairs of the firm, reimbursing himself; and C. presented the instrument of assignment to A., a creditor, who signed it and gave the note which constituted his claim to C., who delivered it to B., and afterwards gave A. the notes signed by the firm and indorsed by B. under the agreement. C. also answered certain questions, in relation to the proposed composition, asked by A., who did not know of its abandonment, before he signed the instrument. *Held,* on a bill in equity by A. against B. and the firm to obtain delivery of the surrendered note and payment of the balance due on it, that the facts warranted a finding that C. was the agent of B. and of the firm; and that it was competent for A. to testify to his understanding of the paper which he signed for the purpose of rebutting any inference which might be drawn from his unexplained signature.

A firm which had failed attempted to effect a composition with its creditors, and A., among other creditors, signed a paper circulated for that purpose. Afterwards the proposed composition was abandoned without A.'s knowledge, and an agreement was made between the firm and B., one of its creditors, by which he took an assignment of all claims against the firm, indorsed and delivered in payment notes of the firm upon the basis of a compromise, and settled the affairs of the firm, reimbursing himself. A., induced by the misrepresentations of the agent of B. and of the firm, signed the instrument of assignment and surrendered the note which constituted his claim to B., who gave him the notes signed by the firm and indorsed by B. under the agreement. A., upon learning the misrepresentation, brought a bill in equity against B. and the firm to obtain delivery of the note and payment of the balance due on it. When the bill was filed there was a large sum due B. under the agreement between him and the firm, which was afterwards paid. *Held,* that A. was entitled to a decree, without returning or offering to return the notes received from B.

BILL IN EQUITY, filed March 6, 1885, by Albert A. Cobb and John C. Cobb, copartners under the name of Albert A. Cobb and Company, against John S. Fogg, and James Tirrell, Alfred Tirrell, and Edward E. Poole, copartners under the name of

J. and A. Tirrell and Company, alleging that J. and A. Tirrell and Company made a promissory note, dated November 27, 1878, for the sum of $2,167.54, payable in four months from date to their own order, and indorsed the same to the plaintiffs in payment for merchandise sold by the plaintiffs to them ; that they did not pay the note at maturity, and still owed the plaintiffs the amount thereof, with interest thereon, less certain payments thereinafter stated; that J. and A. Tirrell and Company suspended payment on all their indebtedness, and on May 1, 1879, made with their creditors, including the plaintiffs, a written agreement of composition, by the terms· of which the creditors were to accept thirty-five cents on each dollar in full discharge and satisfaction of their respective claims, and all the creditors were to become parties to the agreement ; that J. and A. Tirrell and Company made an agreement with the defendant Fogg, then doing business under the name of Fogg Brothers and Company, whereby Tirrell and Company assigned and conveyed to Fogg all of their assets, to secure him for his undertaking to indorse the composition notes·of Tirrell and Company, and to assist them in performing the composition ; that subsequently, in September, 1879, the defendants, by their agent, one Kyle, delivered to the plaintiffs, who accepted them, three promissory notes, one for $254.18, and the other two for $254.19 each, made by Tirrell and Company, payable to their own order, and indorsed by them and by Fogg, these notes being in accordance with the terms of the composition, and being delivered to and accepted by the plaintiffs as made and delivered for the purpose of settling their claim under the composition ; that thereupon the plaintiffs delivered to Fogg the promissory note for $2,167.54, and, upon the request of the defendants' agent, Kyle, and upon his statement that it was necessary to carry out the composition, and was one of the instruments which, by the terms of the composition, the plaintiffs were bound to sign, executed a certain instrument, which recited that the creditors signing it, " in consideration of thirty-five cents on the dollar of the said indebtedness of said firm to us respectively paid by John S. Fogg, . . . hereby sell and assign to the said John S. Fogg all claims, demands, and causes of action which we respectively have against said firm, or against any or either of the members

thereof"; that at the time when the plaintiffs gave up the promissory note for $2,167.54, and signed the instrument above mentioned, the defendants, by their agent, Kyle, represented to the plaintiffs that all of the creditors of Tirrell and Company had signed the agreement of composition, and that none of the creditors had received, or was to receive, any larger sum than the amount provided for by the composition in payment for their claims against Tirrell and Company, and the plaintiffs believed the representation to be true, and relied upon the same; that in fact Tirrell and Company had procured the signatures of several of their creditors to the composition by agreements to pay them more than the amount of the composition, and Fogg knew of those agreements, and made the payments therein provided at the request and for the benefit of Tirrell and Company; that some of the creditors of Tirrell and Company had not signed the composition, and the defendants made private settlements with them for a larger sum than the amounts provided for by the composition; that the defendants, in obtaining from the plaintiffs the promissory note for $2,167.54, committed a fraud upon them; that the plaintiffs were not bound to accept the three composition notes in settlement of the note for $2,167.54, but were entitled to collect the remainder due thereon, with interest, of Tirrell and Company; that the plaintiffs, immediately on learning of the fraudulent conduct on the part of the defendants, brought an action at law against Tirrell and Company to recover the amount due them on the note for $2,167.54, and that suit was still pending; that the plaintiffs were unable to produce the note for the maintenance of the action, because Fogg, though often requested, refused to deliver the same to the plaintiffs, and, though summoned at the trial of the action to produce the note, has refused to produce the same, pretending that he has bought the note of the plaintiffs and has a valuable right and interest in it; and that Fogg still retains the note, and conceals the same, so that it cannot be taken on a writ of replevin by the plaintiffs.

The prayer of the bill was that Fogg might be ordered to deliver the note to the plaintiffs; that the instrument of assignment might be delivered up to be cancelled, or declared void, so far as the plaintiffs were concerned; and that Tirrell and

Company might be ordered to pay the plaintiffs the amount due on the note, with interest thereon; and for other and further relief.

The case was referred to a master, who found and reported the following facts, among others.

Since the bill was filed, the defendant Fogg has deceased, and his executors have come in to defend. Alfred Tirrell, one of the partners, has also died since the order was issued to the master, and no representative of his has appeared or been summoned in, and the counsel for James Tirrell filed an objection to proceeding under the rule until the further order of the court.

In the spring of 1879, the firm of J. and A. Tirrell and Company was indebted to the plaintiffs on the note in question, given for merchandise sold them by the plaintiffs. On March 22, 1879, the firm failed in business, and on March 26 made a voluntary assignment to James R. Plum, of New York, in trust for their creditors, of all their property in this Commonwealth, and in New York and Pennsylvania, where they also had creditors.

Plum immediately took possession of all the property in this Commonwealth and elsewhere, under the trust deed.

Some time in April, 1879, a meeting of the creditors of the firm was held in Boston, at which a committee was appointed to examine the affairs of the firm; and their report, dated April 29, 1879, contains this clause: "Your committee have urged J. and A. Tirrell and Company to settle with the creditors, giving indorsed notes, and after several interviews got an offer of thirty-five per cent, without interest, in equal notes, six, nine, twelve months from May 1, 1879, indorsed by Albert Tirrell, he making the condition that every creditor accepts the offer."

In accordance with that report, an attempt was made by the firm to effect a compromise with their creditors, and a composition paper, dated May 1, 1879, was circulated and signed by many of the creditors, including the plaintiffs, and by the firm of Fogg Brothers and Company, the principal member being the defendant Fogg. By this paper the several signers agreed under seal to accept thirty-five per cent of their claims in full, the same to be paid by the notes of Tirrell and Company dated

May, 1879, and payable in six, nine, and twelve months, to be "satisfactorily indorsed." This paper also stipulated that all creditors should become parties thereto, and that the signers should execute any other papers necessary to make the discharge to reconvey and reinvest in them any property before conveyed by them in trust for their creditors. While it was in circulation, Albert Tirrell for some reason declined to indorse the notes for the thirty-five per cent, and the firm then suggested Fogg as indorser in place of Albert Tirrell; but three or four of the larger creditors of the firm having refused to sign the paper in the latter part of July, all further efforts to procure signatures ceased, and the firm never signed the paper at all. Some of the signatures to this paper were obtained by James Tirrell, some by one Weatherbee, and some by George Kyle.

Thereupon an arrangement was made, the result of which was that Fogg took an assignment to himself of all the claims against the firm, for some of which he paid much more than the thirty-five per cent, and indorsed and delivered to some of the creditors, including the plaintiffs, the same notes for thirty-five per cent which had been prepared for Albert Tirrell to indorse, though it did not appear when the notes were written, nor by whom, nor how or when Fogg obtained them. Fogg received from Plum a conveyance of all the property which had been transferred to him under the deed of trust, or its proceeds; managed and disposed of the same, or much of it; kept an account of all his receipts and disbursements, including all sums he advanced or paid for the claims, interest on his advances, commissions for services, etc., and agreed to pay over the balance in his hands to a family creditor of the firm, Hannah Tirrell, upon the order of Tirrell and Company. The several papers in which this arrangement was embodied, though made and signed at different times, were dated August 9, 1879, and, from their relation to each other, presumably should be considered parts of one and the same transaction. Before Fogg received the conveyance from Plum, he had obtained manual possession of all the notes of the firm, including the plaintiffs' note, and assignments of all accounts and other claims against them, except those of two or three creditors of the firm.

The paper in regard to the assignment of the claims to Fogg

was signed by many creditors, including the plaintiffs and Fogg Brothers and Company. It was proved that some of these signatures were obtained by the promises of those employed to procure signatures, but only at the time the signatures were obtained in each particular case, to pay more than thirty-five per cent of the claims, and some creditors were in fact paid much more than that amount. These were the same creditors in part who had declined to sign the composition deed, and some of them were creditors who had filed petitions in insolvency, or who had acted on the committee of creditors above mentioned.

The plaintiffs signed this paper in the latter part of August or the early part of September, 1879, when presented by Kyle, who had been in the employ of the firm; and at the same time the plaintiffs delivered to Kyle the original note of $2,167.54, which Kyle afterwards delivered to Fogg, and the plaintiffs received from Kyle the three notes before described, signed by Tirrell and Company and indorsed by Fogg, for their thirty-five per cent.

" I find as a fact, that, before signing this paper and the delivery of their original note, the plaintiffs inquired whether any other creditors were receiving more than thirty-five per cent; that they were informed by Kyle that none had received or would receive any more; that they delivered up their original note and signed the papers, relying upon this assurance; and that they would not have done so had they known that it was untrue. I also find that at that time the plaintiffs had heard of no abandonment of the proposition of compromise; that they were informed by Kyle that the paper then signed by them was necessary to carry out the original compromise agreement of May 1, and, if the testimony be competent, against the defendants' objections, I find that they so understood the paper, although they read it before signing. It did not appear that, at the time the plaintiffs signed the papers, any creditor had then received more than thirty-five per cent, nor was there any direct evidence by whom Kyle was employed, nor what authority he had to make the statements he did make; nor was there any evidence that Fogg himself procured any signatures, or personally promised to pay more than thirty-five per cent, although in fact he did so. There was no evidence that either of the defendants knew of

Kyle's statements prior to the trials in the suit at law hereafter referred to. The defendants objected to the admissibility of the plaintiffs' testimony as to the statements of Kyle, as being beyond the scope of any authority shown to exist in him."

The agreement between the firm and Fogg, dated August 9, 1879, but not executed until the latter part of December, 1879, provided, among other things, that " whereas the said party of the first part (Fogg) has agreed to settle up the debts of the said firm and of the individual members thereof under a composition with their creditors," and has received from Plum transfers of all the personal and real estate of the firm, and has received assignments of the debts due them and claims against them, he should dispose of the personal property through the firm as his agents, apply the proceeds to reimburse himself for all payments " for which he shall become liable under the terms of the composition aforesaid," commissions, etc., pay over the surplus to the order of the firm, and release the firm from all claims he might hold against them as assignee of the claims. Fogg was directed by an order on the agreement to pay the surplus, if any, to Hannah Tirrell, a creditor of the firm who was not provided for in the other paper.

Under these various agreements, Fogg, having taken possession of the property about September 15, 1879, proceeded to manage and dispose of the same for several years, employing the services of the firm and some of the former employees, and keeping an account against the firm of all his receipts and disbursements. In March, 1885, when this bill in equity was filed, the balance due Fogg was about $28,000, and was not settled until 1889, when, after being fully reimbursed for his expenditures and services, he transferred the balance of the property to some members of the firm through and by the orders of Hannah Tirrell, and also delivered up to the firm or its assigns all the claims which had been assigned to him, except the note of the plaintiffs, and took a bond of indemnity from the firm against any liability on the suit hereinafter mentioned. This agreement between Fogg and the debtors was objected to by the defendants as incompetent and inadmissible.

The plaintiffs, after learning that some other creditors had received more than thirty-five per cent, commenced an action at

law against Tirrell and Company, on December 22, 1879, to recover the balance due on the original note of $2,167.54, after crediting the amount received on the three notes before described, which case was decided against them in the Superior Court because they had not previously tendered back the notes or their proceeds. This ruling was reversed, and the case sent back for a new trial. See 137 Mass. 143.

At the next trial it was again decided against them, because the note was not in their possession, but in that of Fogg, claiming title thereto; which ruling was affirmed, and a general judgment was entered for the defendants. See 141 Mass. 459. The two reports were read before the master, and also a copy of the rescript, and the certificate of the clerk of the court as to the recovery of the judgment, and the issue of execution on April 27, 1886.

" The defendants contended before me that this judgment was a bar to the bill in equity; or, if not, that the pendency of the suit at law on March 6, 1885, when the bill was filed, was good cause of abatement thereof; also that the bill was multifarious. None of these objections appear to be set up in the answers, and I did not consider it within my province to pass upon them."

The master found that the plaintiffs were entitled to the possession of the note for $2,167.54, without first tendering back the composition notes, so called, or the proceeds of them, and also to a decree for the payment of the balance due on the original note.

" A draft report was furnished all the counsel in the case, and after more than five days a hearing was had, and amendments made at the suggestion of the defendants' counsel."

While the case was pending before the master, the defendant James Tirrell filed a suggestion of the death of the defendants Fogg and Alfred Tirrell, and moved that the rule issued to the master be revoked, and that the bill be dismissed.

After the master's report was filed, several motions were made, the nature of which appears hereafter.

Hearing before *Holmes*, J., who reported the case for the consideration of the full court, as follows:

" This case came on to be heard before me on the motion to dismiss, on the master's report, and motions on the plaintiffs'

part that the report be accepted and a final decree entered thereon, and on the defendants' part for a decree on the report as it stands, and also that the report be recommitted to the master, on the ground that they received copies of the final report only after it was filed, and therefore, as they alleged, too late for objection under Equity Rule 31. Without passing on the interpretation of the rule, I overruled this last motion, on the ground that the defendants' rights, as stated by them, were preserved by the master in his report. I report the case to the full court on the motions first mentioned, viz. the motion to dismiss and the motions for a decree.

"At the hearing before me, the defendants asked leave to amend by pleading multifariousness. I stated that, so far as it was desired to take a technical objection at this stage, I should not allow it, and that, so far as the defendants wished to avail themselves of the defence that relief on the note was not proper in this suit or in equity, that would be open to them.

"A ground on which the relief was asked on the note was that, as the plaintiffs could not sue upon the note until they had recovered it from the adverse hand in which it was held, the note might be barred by the statute of limitations before any relief could be obtained upon it, unless this proceeding was allowed. The statute of limitations now bars them in fact. An action at law was pending on the note when this bill was brought."

*J. O. Teele,* for the executors of John S. Fogg.

*A. E. Avery,* for Tirrell and Poole.

*R. M. Morse & W. M. Richardson,* for the plaintiffs.

MORTON, J. The only questions reserved by the report are those arising on the motion to dismiss by reason of the death of one of the defendants, and on the motion of the plaintiffs that the report be accepted and a final decree entered, and that of the defendants for a decree on the report as it stands. There were also motions by the defendants to recommit the report, on the ground that they had received copies of it only after it was filed, without opportunity to file objections under Rule 31 in equity proceedings, and that they might be allowed to amend by pleading multifariousness. The presiding justice overruled the motion to recommit, on the ground that the defendants'

rights as stated by them were preserved by the master's report, and in regard to the motion for leave to amend stated that he should not allow it for the purpose of taking a technical objection at that stage, and that, so far as the defendants' object was to avail themselves of the defence that the plaintiffs were not entitled to relief in equity, that would be open to them. No appeal from or exception to the rulings of the presiding justice on these last two motions was taken by the defendants, and we do not see, therefore, how any question arising upon them is before us. We may remark, however, that if his rulings on these matters did not relate to matters addressed to his discretion, and were the subject of exception or appeal, and were properly before us, we see no reason to doubt, on such facts as appear, that he was right in declining to allow the motion to amend at the stage at which it was presented, and in overruling the motion to recommit. A draft report was furnished to defendants' counsel, and after more than five days a hearing was had and amendments made at their suggestion. No objections appear to have been filed or offered for filing at any time, and the point that the master did not allow the defendants opportunity to file objections was not taken till the hearing before the single justice, several months after the filing of the report, of which the defendants do not contend that they had not notice. If they had any objections to the report, we think that they must be deemed to have waived them. The objection of multifariousness was not set up in the answers, and was not taken till the hearing before the master, several years after the filing of the bill, and after the suits at law had been decided in the defendants' favor, and when the statute of limitations would have been a bar to a new suit on the note. We think that it clearly came too late. *Jones* v. *Keen*, 115 Mass. 170.

We see no ground on which the motion to dismiss should have been granted. The bill was brought to compel Fogg to deliver up the note, and to obtain judgment for the balance due on it against the makers, J. and A. Tirrell and Company. So far as the bill seeks to obtain judgment against the makers, it is obvious that the death of one of the joint contractors did not cause the suit to abate; (Pub. Sts. c. 165, § 12 ; *New Haven & Northampton Co.* v. *Hayden*, 119 Mass. 361 ; *Pingree* v. *Coffin*, 12

Gray, 288, 314, 315;) or operate to deprive the survivors of any defences which they might have to the note which were properly pleaded. ˙All those were still open to them. So far as the bill seeks to compel Fogg to surrender the note, it is manifest that the decree must run against him alone. And though the firm of Tirrell and Company were properly made parties as makers of the note, (*Sears* v. *Carrier*, 4 Allen, 339,) the death of one member of the firm cannot affect the plaintiffs' right to a decree against Fogg if they are otherwise entitled to it. The case would be entirely different if the bill sought for an accounting in respect of the partnership matters. *Towle* v. *Pierce*, 12 Met. 329. *Fourth National Bank of New York* v. *Carrollton Railroad*, 11 Wall. 624.

The defendants further contend that the judgment in *Cobb* v. *Tirrell*, 141 Mass. 459, is a bar to this suit. Assuming that under the pleadings this defence was open to them, we do not think that it entitles them to a decree. It appears from the master's report that the facts in regard to the commencement and prosecution of the action of *Cobb* v. *Tirrell* were in evidence before him, and that the reports of the case in 137 Mass. 143 and 141 Mass. 459 were read, as well as a copy of the rescript and the certificate of the clerk as to the recovering of judgment and the issuing of execution. .

The opinion of the court in 141 Mass. 459 shows that judgment was not rendered for the defendants on the merits of the case, but on the ground that the plaintiffs did not have possession of the note, and that their right to it as against Fogg could not be tried in that action. It is clear that the issues actually tried and determined in that case were entirely different from those involved in this case; and we think, therefore, that the judgment did not operate as a bar, (*Foye* v. *Patch*, 132 Mass. 105, and *Watts* v. *Watts*, 160 Mass. 464, 465,) and that the pendency of that action did not operate to abate this.

The defendants also contend that the transaction in regard to the note was a sale by the plaintiffs and a purchase by Fogg, and not a part of a composition settlement between Tirrell and Company and their creditors. They concede that, if it was a part of a composition settlement, the plaintiffs are entitled to the. relief which they seek. The evidence is not reported, and the master

does not state expressly whether the note was given up by the plaintiffs as part of a composition settlement; but it is evident that he must have found so, and that that forms the basis of his finding in favor of the plaintiffs; and without going into the matter in detail, we think that this conclusion was well warranted by the facts reported and found by the master. The agreement between the firm and Fogg, which was executed in the latter part of December, 1879, though dated August 9, 1879, expressly provides, amongst other things, that " Whereas the said party of the first part (Fogg) has agreed to settle up the debts of the said firm and of the individual members thereof under a composition with their creditors," it is agreed that the partnership property shall be sold, and out of the proceeds he shall be reimbursed and indemnified for money paid out by him and for which he shall become liable " under the terms of the composition aforesaid." This agreement, which was clearly competent against Fogg, who was a party to it, would justify a finding that the transaction by which the plaintiffs were led to give up their note and to take notes therefor for thirty-five per cent indorsed by Fogg, was a part of a composition settlement. And the manner in which the accounts were kept, and the business conducted, and the property finally disposed of, and the other facts found by the master, especially the fact that Fogg had in his possession, and indorsed and delivered to some of the creditors, including the plaintiffs, the same notes for thirty-five per cent which had been prepared for Albert Tirrell to indorse under the composition agreement of May 1, are all consistent with this view.

The defendants argue that the master was not justified in finding, as he must have found, that Kyle was the agent of Fogg, and of Tirrell and Company. But on the facts reported we think that the master's finding was clearly justifiable, and that Fogg and Tirrell and Company were bound by his representations. Kyle had been in the employ of Tirrell and Company. He obtained signatures, presumably on their behalf, to the agreement of May 1. Later, he presented to the plaintiffs the agreement of August 9, which they signed, and received from them the note which they held, which he afterwards delivered to Fogg, and gave to the plaintiffs the three notes signed by Tirrell and Company, and indorsed by Fogg, for the thirty-five per

cent which they had agreed to accept. The master well may have found that the only reasonable explanation of Kyle's possession of the notes, and of his conduct, was that he was the agent of Fogg, and of Tirrell and Company, with authority to answer such questions and give such information as creditors naturally would ask or desire in matters relating to the composition.

The defendants also insist that the plaintiffs should have placed Fogg *in statu quo*, either by return of the composition notes or by an offer in the bill to return them. In 137 Mass. 143, it was decided that this was not necessary as to Tirrell and Company, and it was said that the notes were not the consideration for the composition agreement, and that they only paid a part of what was justly due to the plaintiffs, and that the payment was to be referred to the original indebtedness, and not to the contract, which had been avoided. Moreover, the notes were the notes of Tirrell and Company, and as against them the plaintiffs clearly had the right to keep them and the proceeds of them. And although when the bill was filed there was about $28,000 due Fogg under the agreement between him and Tirrell and Company for what he had paid and done to carry out the composition, that has since been paid; so that he no longer has any claim to a return of the notes or their proceeds, if he ever had any, and the end to be gained by a restoration of the *status quo* has been reached in another way.

We think that the testimony of the plaintiffs as to their understanding of the paper which they signed was competent for the purpose of rebutting any inference which might be drawn from their unexplained signatures.

We have treated the report of the single justice as intended to save to the defendants the various objections and exceptions stated in the master's report, and we think upon the whole case that the plaintiffs are entitled to a return of the note, and a decree for the payment of the balance due after deducting the sums received from the composition notes.

*Decree accordingly.*