ADOLPH P. J. BENDSLEV *vs.* JOSEPH N. LOVELL & others.

Suffolk.    December 2, 1919. — February 28, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract,* What constitutes, Performance and breach. *Agency,* Existence of relation. *Stockbroker. Practice, Civil,* Judgment on auditor's report. *Evidence,*
Presumptions and burden of proof.

An action against a stockbroker by a customer for money had and received was
referred to an auditor. Upon the filing of the auditor's report, the plaintiff
moved for judgment under Rule 31 of the Superior Court (1915). The motion,
by agreement of the parties, was heard upon the auditor's report without other
evidence. Judgment was ordered for the defendant. *Held,* that the finding for
the defendant imported a finding of all subsidiary facts essential to that conclusion.

In the action above described it appeared from the report of the auditor that the
plaintiff, desiring in November to purchase, "when, as and if" issued, shares of
stock in a corporation which it was proposed to issue the following July, requested
an officer of a trust company to transmit the order to the defendant. This was
done. The officer of the trust company knew that the stock of the corporation
in question was not dealt in on the Boston stock exchange and could be bought
only in New York city, where the defendant had no office, that under such
circumstances the defendant's usual course of business was to transmit the
order to a correspondent in New York city for execution there, and that the
defendant would not himself receive a certificate for the stock until he had
paid for it, that he would not carry it himself, but that he would ask his New
York correspondent to carry it for him. The defendant transmitted the order
to his correspondent, who accepted the order, purchased the stock when it was
issued and informed the defendant thereof and the defendant then notified
the plaintiff. The plaintiff did not pay for the stock at once but asked for
and was given time to raise the money. He afterwards paid certain amounts
on account. In the meantime, the market price fell and, the plaintiff refusing to pay more, the defendant sold the stock and applied the proceeds of the
sale to the debt owed him by the plaintiff. The action was for the sums of
money paid to the defendant by the plaintiff. *Held,* that

   (1) A finding was warranted that the officer of the trust company was the
plaintiff's agent and that the plaintiff was charged with his knowledge;

   (2) A finding was warranted that the contract of the defendant with the plaintiff merely required the defendant to deal with the order of the plaintiff in his
usual course of business;

   (3) A finding was warranted that the defendant had fulfilled his part of the
contract;

   (4) The contract did not require the defendant to carry the stock on margin,
but required the plaintiff to take the stock when issued and to pay for it then in
full;

(5) There was not involved any question as to whether the defendant at all times had in his possession or control a sufficient number of shares of the stock to meet the demands of all his customers, or whether there was an "actual purchase or sale" of the securities, or whether the stock was within the "immediate control" of the defendant;

(6) A finding being warranted that the plaintiff had failed to show a breach of contract by the defendant, a finding for the defendant was warranted.

CONTRACT upon an account annexed containing three items entitled "money had and received," amounting to $3,400, and one item of interest amounting to $71.36. Writ dated May 2, 1918.

In the Superior Court, the case was referred to an auditor. Material findings of the auditor are described in the opinion. The last sentence in the report was as follows: "I find, if it is matter of fact, and rule, if it is matter of law, that upon all the evidence the defendants owe the plaintiff nothing."

After the filing of the auditor's report, the plaintiff moved under Rule 31 of the Superior Court (1915) for entry of judgment according to the report. By agreement of the parties the motion was heard solely on the auditor's report by *Wait,* J., who ordered judgment for the defendants upon the motion and reported the case for determination by this court, it being agreed that judgment should be entered for the plaintiff in the sum of $3,471.36 and interest if, upon the facts as found by the auditor and set forth in his report, judgment should not have been ordered for the defendants but should have been ordered for the plaintiff; otherwise, that judgment should be entered for the defendants.

Material portions of Rule 31 of the Superior Court (1915) are as follows: "On the coming in of the auditor's report, either party may move for entry of judgment according to said report; and the court, thereupon, shall order such judgment to be entered, unless, within a time stated, cause appears or is shown to the contrary. If cause appears or is shown, the court may hear the parties and frame appropriate issues for the court or jury, upon which the trial shall be had."

*W. R. Bigelow,* for the plaintiff.

*H. F. Hurlburt, Jr.,* for the defendants.

DE COURCY, J. The plaintiff paid the defendants, who are stockbrokers, $3,400 on account of the purchase of certain stock, and seeks to recover it in this action of contract. In the Superior Court the case was heard upon the auditor's report; and judg-

ment was ordered for the defendants. Under the terms of the report judgment is to be entered accordingly, unless the plaintiff was entitled to judgment as matter of law on the facts found by the auditor.

It is conceded that the plaintiff cannot recover under the gaming statute, R. L. c. 99, § 4. That an actual purchase was intended, is settled by the findings of the auditor: "Both the plaintiff and the defendants contemplated actual delivery of the stock when issued. At the time the order was given, i. e., on December 1, 1916, the plaintiff intended to pay for the stock in full when it should be issued."

It is now urged that there was a breach of contract by the defendants, for which the plaintiff can recover at common law. In determining what was the contract between the parties, as indicated by the facts found, the finding for the defendants imports a finding in their favor of all the subsidiary facts essential to that conclusion. *Adams* v. *Dick,* 226 Mass. 46, 52. The plaintiff in November, 1916, desired to buy one hundred shares of the Chicago, Rock Island and Pacific Railroad Company Preferred "B" stock. The stock had not been issued; but the proposed plan for the reorganization of the road contemplated its issue in the following July. Any purchase of this stock would be "when, as and if" issued, and the plaintiff so understood. He did not personally see the defendants, but requested one Coolidge, an officer of a trust company of which the plaintiff was a customer, to transmit the order to the defendants; and he did so. The stock was not dealt in upon the Boston Stock Exchange; and the defendants had no office in New York. The auditor found, "Mr. Coolidge knew that the said stock could be bought only in New York; that the defendants' usual course of business was, upon receipt of an order to buy such a stock, to transmit the order to the defendants' correspondents in New York for execution there. Mr. Coolidge also knew that the defendants would not themselves receive a certificate for the stock until they had paid for it, and that they would not carry it themselves, but would ask their New York correspondents to carry the stock for them." The facts warrant a finding that Coolidge was the plaintiff's agent, and that consequently his knowledge in connection with the business concerned was the plaintiff's knowledge. *Cobb* v. *Fogg,* 166 Mass. 466.

*Thompson* v. *Brady*, 182 Mass. 321. Indeed the plaintiff himself testified that "he did not expect that the defendants would buy the stock other than in the usual course of their business, that it was immaterial to him how the defendants carried the stock so long as he would get the stock, if he paid for it, and that he knew the stock was not traded in on the Boston exchange." It could be found that the defendants were justified in their understanding that "their contract with the plaintiff was not a contract which required them themselves to carry the stock which he had ordered them to buy, but was a contract to deal with his order according to the usual course of their business in dealing with orders for stocks which were bought and sold only in New York and not in Boston; that is, the defendants understood that they were required by the contract to direct their New York correspondents to buy and carry the stock for the defendants, and that when the plaintiff had paid them for the stock they would require their New York correspondents to deliver a certificate in the plaintiff's name for the one hundred shares." The defendants did transmit to their New York correspondents, Halle and Stieglitz, an order to buy the one hundred shares which the plaintiff had required, and these correspondents accepted the order. In short, it could be found that the defendants fulfilled their part of the contract actually made, and that nothing remained for them to do until the plaintiff paid for his stock.

As already stated, when the order was given, on December 1, 1916, "the plaintiff intended to pay for the stock in full when it should be issued," July 14, 1917. When the defendants were informed by their New York correspondents that the latter had bought the one hundred shares of stock, they notified the plaintiff. For the first time he called upon the defendants; but instead of paying in cash, as agreed, or giving security, as requested, he asked and was given time to raise the money. When he paid $3,000 on August 31, 1917, the market price of the stock had fallen. He paid $200 September 14, and $200 October 11; but never paid nor offered to pay the full price, and never asked that the stock be delivered to him. As the market price continued to fall, and the plaintiff failed to make further payment or supply security as requested, the defendants sold the stock and sent him a statement showing that they owed him $73.75, together with a check for that

sum.  The auditor has not found, and nothing in the evidence compels the conclusion, that the original contract between the parties was changed by the notice or confirmation slip of July 14, 1917, or by the extension of time for payment.  At the time of the plaintiff's default the defendants had done all they were required to do under their contract.

It is unnecessary to consider the further question argued, whether the defendants or their correspondents actually had at all times within their possession or control enough shares of stock to meet the demands of all their customers.  An inquiry as to "actual purchase or sale," and as to whether the stock was within the "immediate control" of the defendants is not involved.  Cases like *Fiske* v. *Doucette,* 206 Mass. 275, *Greene* v. *Corey,* 210 Mass. 536, and *Adams* v. *Dick,* 226 Mass. 46, relied on by the plaintiff, are not applicable to the contract made by these parties.  It was not a contract to carry stock on margin, but one to take the stock when issued, and to pay in full.  As already pointed out, they did not agree to purchase and carry the stock themselves.  Under the contract, as the court could find, the defendants were only required to deal with the plaintiff's order according to the usual course of their business in such dealings, as above set forth.  The plaintiff has failed to show a breach of that contract.  In accordance with the report, the entry must be

*Judgment for the defendants.*