# LOUIS HEFTER *et al.*

*v.*

# AARON CAHN *et al.*

1. COMPOSITION AGREEMENT—*not binding if obtained by fraud or deception.* In effecting a composition agreement, the law demands the utmost good faith on the part of the debtor. He can not be permitted, by pretending to be insolvent, to induce a creditor to accept one-half of a debt in lieu

of the whole, when, in fact, his property is ample to pay his creditors in full.

2. Where a composition agreement is made, the debtor professes to deal with all the creditors who enter into it, on terms of perfect equality, and if, at the same time, he has a secret agreement with one of the creditors, which gives him an undue advantage, this is a fraud upon the other creditors, which vitiates the composition agreement.

3. In such case, the creditors, although they may have received the amount named in the composition agreement, may sue for and recover the full amount of their original indebtedness, less the amount received under the composition agreement. It is not essential to the right of action that the creditor should first rescind the composition agreement and return the money he has received under it.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. McCLELLAN & HODGES, for the appellants.

Messrs. ROSENTHAL & PENCE, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought by appellees, in the circuit court of Cook county, against appellants, to recover a balance claimed to be due for goods sold and delivered.

A trial was had before a jury, which resulted in a verdict for appellees for $873.12. A motion for a new trial was overruled, and the court rendered judgment upon the verdict.

The facts contained in this record, upon which the judgment is based, so far as is material to be stated, in order to get a correct understanding of the case, are these:

At the time of the fire in Chicago of October 9th, 1871, appellants were indebted to appellees in the sum of $1746.25. After the fire, one of appellants informed appellees that they could pay all their debts in full if their creditors would give them time. A short time after this, as the evidence tends to show, Mr. Livingston, who was a brother-in-law of appellants, acting as their agent, called upon appellees and informed them that appellants had been looking over their affairs, and had found that they could not pay over 35 cents on the dollar of

their indebtedness.    Appellees then informed Livingston they would not accept the amount offered, but they thought the creditors would be willing to take 50 cents on the dollar, and that they would sign an agreement to compromise on that sum, if the other creditors would.   A few days after this, Livingston called on appellants again, and stated that all the creditors would settle at 50 cents on the dollar.   Appellees then consummated the agreement, and a contract was prepared and executed by the creditors, as follows:

" We, the undersigned, creditors of Hefter Brothers, of Chicago, do hereby agree to accept fifty cents (50) per dollar in full satisfaction and settlement of our respective claims against them, such settlement to be made in two notes of twenty-five (25) per cent each, dated December 1, 1871, and due respectively three and six months from date, and to be signed by Hefter Bro. and indorsed by Engle & Livingston.

Chicago, Nov. 30th, 1871.

(Signed)            Cahn, Wampold & Co.,  -  $1746.25
                    Henry  Greenebaum,  Pres.
                       German Nat. Bank,   -     700.00
                    Riley & Brandemoure, - -      50.00
                    Fichtenberg Bros.   -  -  -  235.30
                    Leopold, Kuh & Co.,  -  -   677.04
                    H. A. Kohn Bro.,   -  -  -  634.91
                 .  Hart Brothers  -  -  -  -    62.00"

Notes were given in pursuance of this agreement, which were paid at maturity.

Subsequently it turned out that Leopold, Kuh & Co. had received their debt in full, and before they executed the agreement the full amount of their debt had been secured.

Upon learning this fact, appellees instituted this suit to recover the balance of their debt.

Appellees base their right of recovery in this case upon two propositions:

*First*—They claim appellants knowingly made a false impression on their minds as to the extent of appellants' prop-

erty, and on this ground they are not estopped by the composition agreement.

*Second*—That the secret agreement entered into with Leopold, Kuh & Co., without the knowledge of appellees, rendered the composition agreement void as to all the creditors.

While it is true the evidence is not entirely harmonious as to what occurred between Livingston and appellees, which induced the latter to agree to the compromise, yet it is apparent, from the evidence, that they were led to believe the assets were not sufficient to pay more than 50 cents on the dollar. They were told that appellees had looked over their affairs, and found they could not pay more than 35 cents on the dollar. No statement of the property and its value was submitted. If it had been, it would have clearly appeared that there was property more than enough to discharge in full all liabilities, for it is shown that, about one year after the settlement, the property of appellants, owned at the time of the compromise, was of the value of near $18.110, while the entire amount of their indebtedness was but little in excess of $4000.

It is not reasonable to suppose that appellees would have settled at 50 cents on the dollar, had a true and correct representation been given them, as to the property then owned by appellants. The jury, no doubt, from the evidence, found that appellees agreed to the settlement upon the representations made by Livingston, the agent, as to the value of appellants' property, and that those representations were not true, and we can not say they were not justified in arriving at that conclusion, from the evidence.

Under this state of facts, would the compromise be binding upon appellees?

It is a familiar rule, that fraud will vitiate any contract, and render it nugatory.

In the case of *Vine* v. *Mitchell*, 1 Moody & Robinson, 337, which is a case, in its facts, very similar to the one under consideration, TINDAL, C. J., told the jury the question for them to decide was, whether the defendant had fraudulently suppressed the fact of his having the beneficial interest in the

leasehold property, and that depended upon the question whether, at the time when the composition was entered into, the parties were dealing upon the understanding that the defendant had no other available property than his book debts. If the question had been asked, and the defendant had said he had no other available property, that would have been clearly fraudulent, and the circumstances of the question not having been, in terms, asked, made no difference, if the jury thought, from all the circumstances, that such was the impression on the mind of the plaintiffs, and that the defendant purposely led them to act under that false impression. If the jury come to that conclusion, they will find a verdict for the plaintiffs.

In effecting a composition agreement, the policy of the law demands the utmost good faith on the part of the debtor. He can not be permitted, by pretending to be insolvent, to induce a creditor to accept one-half of a debt in lieu of the whole, when, in fact, his property is ample to pay the creditor in full.

Good faith requires of the debtor, before he shall be permitted to profit by a composition agreement, that he shall make a full and fair statement of his effects, or that no concealment, deception or fraud should be practiced. *Leving* v. *Gale*, 28 Ind. 486.

But, independent of this question, it appears, from the evidence, that Leopold, Kuh & Co. were creditors of appellees in the sum of $677. Livingston, the agent, endeavored to induce them to settle for 50 cents on the dollar, and sign the composition agreement. This they refused to do. Livingston then sent one Jacob Frost to Leopold, Kuh & Co., and he gave his own note to them for 50 per cent of their debt, payable in one year. They then signed the composition agreement, and in that manner obtained the other 50 per cent of their debt in the same manner as the other creditors. The note given by Frost, he paid at maturity, and Livingston reimbursed him out of his own funds.

By this secret agreement, one creditor obtained an undue advantage, and, by executing the composition agreement, the other innocent creditors were decoyed into the contract, which

they had every reason to believe and suppose to be founded upon the basis of entire equality.

It seems to be well settled by the authorities, that such secret arrangements are utterly void, and ought not to be enforced, even against the assenting debtor. 1 Story's Eq. Jurisprudence, sec. 379, and note; *Wiggin* v. *Bush*, 12 Johnson, 305.

Story, in the section cited *supra*, says: "Such secret bargains are not only deemed incapable of being enforced or confirmed, but even money paid under them is recoverable back, as it has been obtained against the clear principles of public policy."

If, then, a secret agreement made with one of the creditors is void, and contrary to public policy, does justice or honesty require that a composition agreement should be binding upon a creditor who is induced to become a party thereto under the belief that all the creditors are to be paid *pro rata*, when, in fact, one of them has a secret contract from the debtor by which he is to be paid in full, or have an undue advantage over the others? We can not give our sanction to a doctrine so unjust as this.

When a composition agreement is executed, the debtor professes and holds out to deal with all the creditors who enter into it, on terms of perfect equality, when, if, at the same time, he has a secret agreement with one of the creditors, which gives him an undue advantage, this is a fraud upon the others, and a contract thus obtained can not be said to be fairly made, but is tainted with fraud, and a fraudulent contract will not support an action, neither can it be made the foundation for a defense.

In the case of *Spooner* v. *Whiston*, 17 English Common Law, 580, which was a case where the same principle arose as in this case. Mr. Justice Burrough said: "By the terms of this deed, all the defendant's creditors should have signed it, or acquiesced with the terms therein contained, and it appears that one of them, instead of so doing, received a certain sum of money in satisfaction of his demand on the defendant, without coming in or even deferring to the terms of the deed.

This was clearly a fraud on the general creditors, and therefore there is no pretense or color for saying that the plaintiff is bound by the terms of the deed, although he had executed it, by which he merely agreed to put himself on the same footing with the other creditors."

In the case of *Kuhn* v. *Gumberts*, 9 Ind. 430, which is a case, in its facts, very similar to the one under consideration, the court, in deciding the case, said: "It has been repeatedly decided that, if a creditor signs a composition deed, and thereby induces others to sign it, makes a private bargain with the debtor, the effect of which is, to place himself in a better situation than the other creditors, he thereby commits a fraud upon them, and the bargain is void. But the question to settle in this case is, does such bargain render the composition itself void, so as to enable a creditor, who signed it in good faith, to recover his original demand? In transactions betwen a debtor and his creditors, which result in a deed of composition, the utmost good faith is required. The debtor professes to deal upon equal terms with all creditors who enter into the settlement, and they are supposed to stand in the same situation. This, then, being the principle upon which the compromise rests, it would seem to follow, that the debtor, when he induces one creditor to assent to the arrangement, by giving him a secret preference over other creditors, is guilty of a fraud in obtaining the composition deed, because it must be presumed that such other creditors, had they known of such secret preference, would not have assented to the composition; and it may be stated, as a general rule, that an agreement can not be made the subject of an action, or set up as a defense, if it can be impeached on the ground of dishonesty, or as being against public policy." See, also, *Leving* v. *Gale*, 28 Ind. 486.

It is, however, insisted by appellants that appellees can not recover upon the original account until they have rescinded the composition agreement by returning, or offering to return, what they received under it.

We do not think the doctrine of rescission of contracts will apply to a case of this character

If the composition agreement was fraudulent, that rendered it void, and appellees had the right to sue on their original account. Whatever amount had been received, would be applied as a credit on the account. It would be unreasonable to require them, in case they had received one-half of their debt, to return the half received, and then immediately sue and recover it back again. A rule of that character would neither be just nor reasonable. *Pierce* v. *Wood,* 3 Foster, 519, (23 N. H.); *Reyndes* v. *French,* 8 Vt. 85.

It is insisted that the court erred in giving the first and second instructions for appellees, and in refusing to give appellants' second, fourth and fifth.

Upon a careful examination of the instructions, we are satisfied the law was fairly given to the jury in the instructions by the court, and as no substantial error is perceived in the record, the judgment will be affirmed.

*Judgment affirmed.*