## CHARLES L. WOODMAN ET AL.
### v.
## JANE R. STOW.

1. DISCHARGE IN BANKRUPTCY—NEW PROMISE.—It is the general rule that a discharge in bankruptcy will not avail the debtor as a defense, if, after the adjudication in bankruptcy he makes an unconditional promise to pay his former creditor the debt. But where the new promise is in fraud of other creditors, it is void and can not be enforced.

2. COMPOSITION WITH CREDITORS—SECRET PREFERENCE.—Where upon a composition with his creditors by a debtor, a particular creditor by means of a secret bargain secures to himself an undue advantage over the rest of the creditors, it is a fraud upon the other creditors, and he can not enforce such agreement.

ERROR to the Superior Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding. Opinion filed November 29, 1882.

Messrs. GOUDY & CHANDLER, for plaintiffs in error; contending that a secret agreement to pay one creditor in full is fraudulent and void, cited *In re* Haskell, 11 Bank'y Reg. 164; *In re* Sawyer, 14 Bank'y Reg. 241; Russell v. Rogers, 10 Wend. 479; Hefter v. Cohn, 73 Ill. 297; Pinner v. Higgins, 12 Abb. Pr. 343; Mawson v. Stock, 6 Ves. 300; Bank of Commerce v. Hoeber, 14 Cent. Law Jour. 293; Jackman v. Mitchell, 13 Ves. 586; *Ex parte* Hall, 1 Dea. 171; Bigelow on Fraud, 342; Knight v. Hunt, 5 Bing. 432; Cockehott v. Bennett, 2 L. Rep. 563; Jackson v. Lomas, 4 L. Rep. 166; Sumner v. Brady, 1 H. Black. 647; Gilman v. Thompson, 49 How. Pr. 198; Carroll v. Shields, 4 E. D. Smith —; Wood v. Barker, 35 L. J. Ch. 276.

In the absence of any proof to the contrary, it will be presumed that the other creditors had no knowledge of such agreement: Sadler v. Jackson, 15 Ves. 52.

Messrs. MUNROE & LEDDY, for defendant in error; that the action being upon a negotiable instrument, a consideration is presumed, cited 1 Chitty's Pl. 294; 1 Chitty on Contracts, 25; Story on Notes, § 181; Hill v. Todd, 29 Ill. 103; Bilderback v. Burlingame, 27 Ill. 338.

As to the revival of a debt by new promise after petition in bankruptcy: Katz v. Messinger, 7 Bradwell, 526; Corless v. Shepherd, 28 Me. 550; Stillwell v. Cope, 4 Denio, 225; Doanell v. Swaine, 3 Penn. Law Jour. 393; Otis v. Gazlin, 31 Me. 567; Stebbins v. Sherman, 1 Sandf. 510; Froley v. Kelby, 67 N. C. 78.

The subsequent promise makes a new debt and gives a right of action according to the terms of the promise: Dusenbury v.

Hotz, 53 N. Y. 521; Maxim v. Morse, 8 Mass. 127; Stewart v. Recklers, 24 N. J. 427; Fletcher v. Nealey, 20 N. H. 404.

BAILEY, P. J.   This was an action of assumpsit brought by Jane R. Stow against Charles L. Woodman and George T. Pitkin, upon a promissory note, executed by the defendants by the name, style and description of C. L. Woodman & Co., for $7,281.73, bearing date December 20, 1877, payable to the plaintiff or order on demand, with interest at the rate of ten per cent. per annum.

It appears that some time prior to the date of said note, C. L. Woodman & Co., a firm composed of said Woodman and one Olcott, were indebted to the plaintiff in the sum of something over $5,000, and became insolvent.   On the 13th day of October, 1877, they were adjudicated bankrupts, and on the 12th day of November, 1877, a proposition for a composition under the provisions of the Bankrupt Act was submitted by said firm to a meeting of their creditors, said proposition being to pay twenty per cent. of their indebtedness, of which twelve per cent. was to be paid in cash, and of the residue, five per cent. was to be paid in three months, and three per cent. in six months, such deferred payments to be evidenced by the promissory notes of said bankrupts, guaranteed by the plaintiff in this suit.   A resolution accepting such proposition having been adopted at said creditor's meeting, the district court in which the bankruptcy proceedings were pending, fixed the 6th day of December, 1877, for the consideration of said resolution, but final action thereon was not taken by said court until January 15, 1878, at which time said resolution was confirmed and approved.   The terms of said compromise were thereupon carried out, the amount of the notes guaranteed by the plaintiff being some six or seven thousand dollars.

After the adjudication of bankruptcy, Woodman formed a copartnership in business with Pitkin, the other defendant, under the said firm name of C. L. Woodman & Co., and the note in suit was executed by Pitkin as the note of the new firm.   Said note was actually signed and delivered some time in January, 1878, and dated back to December 20, 1877.   The exact date of its execution is not shown with entire certainty,

although the evidence strongly tends to show that it was executed January 10, 1878, before the confirmation of the composition resolution, and while the proceedings on that resolution were pending and undetermined.

There was evidence tending to show that, in pursuance of some arrangement to that effect between Woodman and the plaintiff, the note in suit was given for the remaining eighty per cent. of the indebtedness of the bankrupts to the plaintiff, and that the note had no other consideration than said eighty per cent. of said indebtedness. There was no evidence tending to show that the other creditors of said bankrupts had any notice, while the composition resolution was pending or at the time of its final confirmation, that said bankrupts had secured or agreed to secure or pay the remaining eighty per cent. of the plaintiff's claim. Such being the case, the court, at the instance of the plaintiff, gave to the jury the following instructions:

1. "The court instructs the jury that, if they believe from the evidence that prior to the 13th day of October, 1877, the firm of Woodman & Olcott, of which the defendant Woodman was a member, were indebted to the plaintiff in the sum of $5,352.15, and that on or about said date said Woodman & Olcott were adjudicated bankrupts; and if the jury shall further believe from the evidence that afterward, on the 20th day of December, 1877, the defendants in this case gave the plaintiff the promissory note sued on in this case, for such prior indebtedness, or some part thereof, your verdict should be for the plaintiff.

4. "The jury are further instructed that a party may promise to pay a debt, which has been scheduled in bankruptcy, and such promise is valid and binding, if made after the party making the same has been adjudicated a bankrupt."

The jury thereupon found a verdict for the plaintiff for $5,881.22, the amount appearing to be due on said note, for which sum and costs the plaintiff had judgment.

The only questions we feel called upon to consider in this case are those arising upon the foregoing instructions. The general rule doubtless is, that a discharge in bank-

Woodman v. Stow.

ruptcy will not avail the debtor as a defense, if, after the adjudication of bankruptcy, he makes an unconditional promise to pay his former creditor the debt barred by the discharge, and there need be no new consideration, the moral obligation being a sufficient consideration.   Katz v. Moessenger, 7 Bradwell, 536.   But this rule in no way militates against another equally well recognized principle, that where the new promise is in fraud of other creditors, or in contravention of either the letter or spirit of the Bankrupt Act, it is void and can not be enforced.

Where, upon a composition by a debtor with his creditors, a particular creditor, by means of a secret bargain, secures to himself an undue advantage over the rest of the creditors, his doing so is a fraud upon the other creditors. " So scrupulous are courts in compelling creditors to the observance of good faith toward one another in cases of this kind, that any security taken for an amount beyond the composition agreed upon, or even that sum, better than that which is common to all, if unknown at the time to the other creditors, is void and inoperative."   Russell v. Rogers, 10 Wend. 473.

Hefter v. Cahn, 73 Ill. 296, was a suit by a creditor to recover the residue of his claim, over and above the amount received on composition.   By the composition agreement, the creditors were to accept fifty per cent. of their claims in full satisfaction thereof, and it afterward turned out that certain creditors, before executing the agreement, had their debts secured in full.   The court, in sustaining the plaintiff's right to recover, say:   " By this secret agreement one creditor obtained an undue advantage, and, by executing the composition agreement, the other innocent creditors were decoyed into the contract, which they had every reason to believe and suppose to be founded upon the basis of entire equality.   It seems to be well settled by the authorities that such secret arrangements are utterly void, and ought not to be enforced, even against the assenting debtor."

The general doctrine, supported by these and the numerous other authorities cited by counsel, does not seem to be seriously questioned, but the counsel for the plaintiff insist that

it has no application to his case, because, as they claim, it does not appear that the note in suit was executed until after the plaintiff had given her assent to the composition resolution, nor that her assent to that resolution was given in consideration of the execution of the note.

It is quite immaterial whether said note was in fact given before or after the plaintiff gave her assent to the composition resolution, if it appears that when such assent was given, there was any understanding, tacit or express, that Woodman should secure or pay the plaintiff the full amount of the indebtedness to her, and that the note was given in pursuance of such understanding. It may be observed that, as the instructions above set forth entirely excluded from the jury all hypothesis in relation to such understanding or agreement, it is not now incumbent on the defendants to show that such understanding or agreement was proved, but merely that there was evidence tending to prove it.

The creditors' meeting at which the composition resolution was adopted, was held, it is true, on the 12th day of November, 1877, while the note bears date December 20, 1877, and the evidence shows that it was actually executed some days later even than that. There was evidence, however, showing that at the time the note was executed, the resolution had not been accepted or confirmed by the court, so that the whole matter of the composition was *in fieri* when the note was given. The fact that the note was dated back from the 10th day of January to the 20th day of the preceding December, may be regarded as furnishing some evidence that it was given in pursuance of an agreement between the parties, entered into at least as early as the last named date.

From the evidence given by Pitkin, it appears that the transactions leading up to the execution of the note, so far as he was concerned with them, took place between him and Mr. Stow, the plaintiff's husband, who acted in the matter as the plaintiff's agent. Woodman at the time was dangerously sick, so that his life was despaired of. Stow, during Woodman's sickness, called on Pitkin repeatedly, and alluding, in a general way, to the fact that the plaintiff had become guar-

Woodman v. Stow.

antor of the composition notes, expressed great anxiety as to the situation in which the matters between the plaintiff and Woodman would be left in case of Woodman's death, and importuned Pitkin for security, stating in an altogether vague and indefinite way, the matters he desired to have secured. Pitkin professed ignorance as to the whole affair, but expressed a willingness to do anything Woodman might request, and advised Stow to go and see Woodman and talk the matter over with him. Stow then visited Woodman, and returned and told Pitkin that if he would go and see Woodman, he would tell him how to fix the matter up. Pitkin, thereupon, called upon Woodman and repeated to him Stow's message. Woodman then told Pitkin that he had better fix the matter up with Stow by giving him a note, and when asked as to the sum for which the note should be given, told him that the amount was on a paper lying on the table at his bedside. Pitkin picked the paper up, and found a memorandum, in Stow's handwriting, which turned out to be the exact amount of eighty per cent. of the plaintiff's original claim against the bankrupts. With this memorandum Pitkin returned to Stow, and gave him the note in question, taking the amount from said memorandum, and filling in the date, as well as the other terms of the note, at Stow's dictation.

The foregoing evidence, when considered in connection with the circumstances and relations of the parties as proved, tends at least to show, that in the whole composition scheme it was understood between Stow and Woodman, that notwithstanding the composition, the plaintiff's claim should be protected and paid in full, and that the note was given in pursuance of that understanding.

As the instructions altogether excluded from the jury the question as to the note's being given in fraud of the other creditors of the bankrupts, they were clearly erroneous, and the judgment must therefore be reversed and the cause remanded.

Judgment reversed.