ZELL GUANO COMPANY v. THOMAS L. EMRY and Wife.

*Contract—Composition Among Creditors—Void Agreement.*

1. When a creditor, at the solicitation of a debtor, agrees to enter into a compromise—provided the other creditors will also do so—nothing less than the strictest compliance with the terms of the proposed composition on the part of the debtor, and on the part of the other creditors also, can bind him, and any preference of one creditor over another, whether it relates to the amount to be paid him, the time of payment, or the manner of securing the prompt payment, taints the whole contract and renders it void.  Therefore,

2. Where, in an action on a note, the defence was that plaintiff had agreed to compromise the debt at fifty per cent. of its face (the payment of the compounded sum to be secured by mortgage on real estate)—provided all the other creditors should accept the same terms of settlement—and such defence was established by a verdict, and it was admitted by the debtor on the trial that different and more advantageous terms had been allowed other creditors, such verdict and admission established the essential fact that there was no contract binding on the plaintiff to accept fifty per cent. of the debt in full satisfaction, and judgment should have been entered for the plaintiff for the whole debt.

This was a CIVIL ACTION, tried at November Term, 1892, of HALIFAX Superior Court, before *Shuford, J.,* and a jury.

The following issues were submitted to the jury by the Court, without objection, as the issues between the parties :

1. Did the plaintiff agree to compromise the debt sued on with the defendant Emma J. Emry for fifty cen's on the dollar, to be secured as alleged in the answer?

2. Were the other creditors of the said Emma J. Emry induced by such an agreement to compromise their claims against her at fifty cents on the dollar?

3. Did the said defendant comply with her part of said agreement to compromise?

4. Was the said defendant able, willing and ready to comply with her part of said agreement, and did she offer to comply with the same?

5. Was it part of the agreement that plaintiff should send or come to select and investigate security?

The jury responded, to the first issue, "Yes, provided other creditors accepted the same terms of settlement"; to the second, fourth and fifth issues, "Yes"; and to the third issue "Yes, except giving mortgage."

Judgment was thereupon rendered for the plaintiff for fifty per cent. of the amount claimed, and plaintiff appealed.

The facts necessary to an understanding of the opinion of the Court sufficiently appear in the opinion of Associate Justice BURWELL.

*Messrs. Battle & Mordecai,* for plaintiff ·(appellant).
*Messrs. W. H. Day* and *J. M. Mullen,* for defendants.

BURWELL, J.: The answer of the *feme* defendant sets up as a defence a composition agreement, entered into by the plaintiff and certain of her other creditors to whom she was indebted for fertilizers. The plaintiff denied that it had made any such compromise.

The jury, responding to the first issue, have found that the plaintiff did "agree to compromise the debt sued on with the defendant Emma J. Emry for fifty cents on the dollar,

to be secured as alleged in the answer, provided other creditors accepted same terms of settlement."

Turning to the answer to ascertain how the "fifty cents on the dollar" was to be secured, we find it was to be done "by mortgage or deed of trust on real estate, each creditor to pass upon the sufficiency offered for his respective debt, and if, upon investigation, the same proved not satisfactory, she (defendant) pledged herself to make it so." And from the same source we ascertain that the terms of settlement, so far as they related to the *time* of settlement, were that the payment should be made in the fall of 1890.

It therefore became necessary, in order that the plaintiff might be defeated in the recovery of its entire original debt, that it should be established that the other creditors did accept the same terms of settlement. There was no composition agreement as far as plaintiff was concerned, unless this condition which, according to the verdict, was annexed to its acceptance of the proposition of settlement made to it, was fulfilled.

Instead of proving its fulfillment, we think the defendants have admitted its non-fulfillment.

Among the creditors to whom this proposition was made by defendants, and who were to be parties to the composition agreement, were the Goldsboro Oil Company, Lister's Agricultural Works, and H. S. Miller & Co., the last named being the creditor through whose agent the proposition was submitted to the plaintiff.

We find in the record that on the trial it was admitted " that the defendants settled with Lister's Agricultural Chemical Works on the terms testified to by W. E. Daniel; that they settled with H. S. Miller & Co. on the terms set out in their deed of trust (Exhibit 'B'), and with the Goldsboro Oil Company, after judgment was taken for the debt in full, on the terms testified to by the defendant T. L. Emry, on his cross-examination."

The "terms testified to by W. E. Daniel" were that if the fifty per cent. was not paid at the time agreed upon, to-wit, in November, 1890, "the whole debt was to remain due." The terms of the settlement with H. S. Miller & Co., which were incorporated in the deed of trust made to secure the note given to represent the sum due according to the compromise, were that those creditors (Miller & Co.) should continue to hold their original notes, and should not surrender or cancel them until the new note for one-half the debt was actually paid, and if the latter note was not paid at maturity (November 15, 1890) then the original debt was to be in full force against the defendant "without any offset except what may be paid thereon."

Concerning the settlement made with the Goldsboro Oil Company, the defendant T. L. Emry testified that when notified by the agent of Miller & Co., to whom the negotiations with that company and with the plaintiff had been entrusted, that the Goldsboro Company would not accept the proposition made to it, he opened negotiations with them himself; and, stating what took place as the consequence of these latter negotiations, on his cross-examination he said: "They sued and took judgment at May Term, 1890, of Goldsboro Court, with the understanding, which was inserted in the judgment, that they would accept fifty per cent. within a certain time."

We must assume that the terms upon which these three several settlements were made were agreed upon by the parties concerned in each, and that these settlements carried into effect the only agreements made with these particular creditors.

The terms of these settlements differed very materially, we think, from the terms of that settlement which was offered to the plaintiff, and which it conditionally accepted. It is true that in each the ratio of proposed payment to the entire debt is the same, to-wit, fifty per cent; but to two of these

creditors it was allowed to make only a conditional compromise. They were not required to surrender or cancel the original indebtedness and accept in lieu thereof absolutely a new promise to pay one-half of the surrendered debt in the fall, but were allowed to retain their original claims against the defendant, they promising to surrender them if the payment of one-half the sum was promptly made as agreed; otherwise, the original claim was to be in full force. This was not the proposition made to the plaintiff by the agent of the defendant, as testified to by him in their behalf, nor is it the composition agreement set out in the answer. The retention of the old debt under such condition was an advantage not offered to plaintiff.

We think it even more evident that the Goldsboro Oil Company did not accept the same terms of settlement which were tendered to the plaintiff; that it demanded and received a settlement by cash before the fall of 1890. If it had accepted in good faith the terms offered to the plaintiff, and afterwards—but not because of any secret understanding—payment had been anticipated merely for the accommodation of the debtor, no complaint could reasonably be made. But such are not the facts of this case. Here we have a proposition on the part of the debtor to enter into a certain composition agreement with a certain class of her creditors, and an agreement on the part of one creditor that he will enter into that composition, provided the other creditors will also do so. Nothing less than the strictest compliance with the terms of the proposed composition on the part of the debtor, and on the part of the other creditors also, can bind him. The most perfect good faith is required of all. Any preference of one creditor over another, whether that preference relates to the amount to be paid him, to the time when it is to be paid, or to the manner of securing its prompt payment, taints the whole contract and renders it void.

. From what has been said, it seems to follow that the facts admitted by defendants on the trial, coupled with the finding of the jury on the first issue, establish the essential fact that there is no contract binding the plaintiff to accept one-half of its debt against the *feme* defendant in full satisfaction of it, and the other issues and the findings of the jury thereon become of no importance in determining the rights of the parties. The very foundation of the defence was destroyed by the verdict and the admissions, and plaintiff was entitled to a judgment for the who'e debt, according to the prayer of the complaint. The cause is remanded, to the end that judgment may be so entered.

Error.