POWERS DRY-GOODS COMPANY v. MONS J. HARLIN and Others.[1]

May 10, 1897.

Nos. 10,325—(32).

### Composition with Creditors—Avoidance for Fraud.

A creditor not guilty of the fraud may ignore and repudiate a general composition settlement with a debtor, where another creditor, with the debtor's connivance, has secretly obtained an undue advantage and a preference in the settlement, and may recover of the debtor on the original claim.

### Same—Release of Sureties.

A security given by a surety is voidable on the ground of fraud if there is, with the knowledge or assent of the creditor, such a misrepresentation to or concealment from the surety of the transaction between the creditor and his debtor that, but for the same having taken place, either the suretyship would not have been entered into at all, or, being entered into, the extent of the surety's liability might be thereby increased.

### Same—Sufficiency of Evidence to Show Fraud and Release.

H. Bros., being insolvent, entered into a composition agreement with all of their creditors, among whom was P., a corporation, on the basis of 33 1-3 per cent. In accordance with the terms of the composition, other creditors were paid the agreed percentage in cash, while P. accepted and received promissory notes for the amount agreed upon,—three in number, —each secured by a surety. As a condition to concurring in the composition, and without the knowledge of the other creditors, P. demanded and received from the debtors a promissory note for the balance of its claim, giving back an agreement to surrender such note on being paid 25 per cent. of its face value. This secret agreement was concealed from the sureties, and they were induced to sign the composition notes in the belief that by the composition H. Bros. were released and discharged from all indebtedness. *Held*, that payment of the notes could not be enforced as against the sureties.

Appeal by plaintiff from an order of the district court for Hennepin county, Belden, J., denying a new trial after findings for defendants. Affirmed.

Three cases were tried together, and it was stipulated that the decision upon this appeal should be conclusive in all three cases.

[1] Reported in 71 N. W. 16.

*P. J. McLaughlin* and *Geo. F. Edwards*, for appellant.

The note representing the secret agreement is illegal and void. The decisions are uniform that the agreement itself is void as to all parties. Newell v. Higgins, 55 Minn. 82; First National v. Steele, 58 Minn. 126. It has been held that where money was paid by the debtor under such secret agreement it may be recovered from the creditor. Gilmour v. Thompson, 49 How. Pr. 198; Pinneo v. Higgins, 12 Abb. Pr. 334; Atkinson v. Denby, 7 H. & N. 933; Solinger v. Earle, 82 N. Y. 393. But the composition agreement will be upheld, notwithstanding the secret agreement, as to all parties, and irrespective of whether they knew of the secret agreement or not, at least where the secret agreement, as in the case at bar, is merely executory; and the payment of the composition agreement notes will be enforced. Hanover v. Blake, 142 N. Y. 404; Page v. Carpenter, 10 N. H. 77; Bartlett v. Blaine, 83 Ill. 25. The sureties on the composition notes should not be released. The failure to communicate a fact to a surety respecting the subject of the contract will be a fraud upon the surety, and vitiates the contract only when that fact must necessarily increase the surety's responsibility or operate against his interest. Comstock v. Gage, 91 Ill. 328; Roper v. Trustees, 91 Ill. 518. An agreement affecting the rights of a surety so as to work his discharge must further be valid, and enforceable at law. Allen v. Jones, 8 Minn. 172 (202); Richmond v. Standclift, 14 Vt. 258; Bank v. Bingham, 33 Vt. 621; Davis v. Converse, 35 Vt. 503; Mitchell v. Cotton, 3 Fla. 134; Steele v. Mills, 68 Iowa, 406; McClemore v. Powell, 12 Wheat. 553.

*Shaw, Cray, Lancaster & Parker*, and *Charles E. Bond*, for respondents.

The admission that this note is void must mean that it is void for the reason that it was taken in fraud of the other composition creditors. If it is void for this reason, it must follow that the composition settlement was thereby, at least as to all parties innocent of the fraud, avoided, and that the insolvents were and are still liable, at least to all creditors except appellant, for the entire balance of their claims. White v. Kuntz, 107 N. Y. 518. It must therefore follow that the liability and risk assumed by the sureties was much greater than it would have been had the composition settlement been

valid, as it appeared to be, because if the sureties have to pay these notes, the means of being reimbursed by the insolvents are very materially less than they otherwise would have been, because the insolvents still owe two-thirds of all the claims of the composition creditors who were innocent of the fraud.    Appellant, when it accepted the notes, knew that the liability and risk of the sureties was greater than it appeared to be, and greater than it would have been, had it not been for the invalidity of the composition agreement, occasioned by appellant's fraud.   In support of this position see Doughty v. Savage, 28 Conn. 146; Stone v. Compton, 5 Bing. N. C. 142; 24 Am. & Eng. Enc. Law, 793; Selser v. Brock, 3 Oh. St. 302; Franklin v. Cooper, 36 Me. 179; Ham v. Grere, 34 Ind. 18; Graves v. Tucker, 10 S. & M. 9; Booth v. Storrs, 75 Ill. 438; Traders' v. Herber, 67 Minn. 106.

COLLINS, J.   After defendants Harlin Bros. had made an assignment for the benefit of their creditors, among whom was plaintiff, a corporation, a composition agreement was made and entered into between the debtors and each of their creditors upon a basis of 33 1-3 per cent. of the entire indebtedness.    In accordance with this agreement, plaintiff accepted and received the debtors' promissory notes, with sureties, as hereinafter stated, while all other creditors received their money immediately.   Defendant Sederberg was one of the creditors signing the composition agreement, and, after it had been signed by all parties thereto, he became a surety upon one of these notes.    At maturity this note was taken up by the execution and delivery of another note for the same sum executed and delivered by Harlin Bros. with Sederberg as surety.   Defendant Hanson also became a surety upon one of the original notes, and so did defendant Nelson.   When these three notes matured, separate actions were brought, and each of these sureties answered.

Upon trial by the court without a jury, the court found that, before the composition agreement was signed by any of the creditors, plaintiff, as a condition to its signing the same, and without the knowledge of any of the other creditors of Harlin Bros., and without the knowledge of any of the parties who became sureties, demanded that Harlin Bros. give their written promise to pay plaintiff a larger

percentage than was to be paid to the other creditors, and that pursuant to this demand, and before plaintiff signed the composition agreement, and as a condition to said signing, Harlin Bros. acceded to the demand, and thereupon executed and delivered to plaintiff three promissory notes for the balance due, 66 2-3 per cent. of plaintiff's entire claim, taking back from the plaintiff its written stipulation to discharge and surrender the note last mentioned upon payment of 25 per cent. of the same.

The court also found that neither of these sureties had any knowledge of this secret agreement until long after the note on which Sederberg became surety had been renewed, as before stated; that each of the sureties signed at the request of Harlin Bros., and upon their representations that they had made a valid and complete composition with all of their creditors on the basis of 33 1-3 per cent. of their total indebtedness; and, further, that neither of the sureties would have become such, had they known to the contrary. Later, Harlin Bros. again being insolvent, made another assignment for the benefit of their creditors. The question in this case is, must the secret agreement found by the trial court to have been made between plaintiff creditor and defendant debtors, and to have been executed as a condition for the plaintiff's signature to the composition agreement, by the delivery of the debtors' note for the balance of plaintiff's claim over and above the amount stipulated for in the composition agreement, be held to have discharged the sureties upon the notes given in accordance with the terms of the agreement last mentioned? · The answer to this question turns, we think, upon whether or not the composition agreement itself was rendered invalid by the execution of the secret arrangement whereby the plaintiff secured the debtors' note before referred to.

While there are some decisions to the contrary, the weight of authority is clear that a creditor not guilty of the fraud may ignore and repudiate a general composition when another creditor has secretly obtained an undue advantage and a fraudulent preference in the composition, and may recover on the original claim. A large number of cases might be cited in support of this statement of the law, but prominent among them are Doughty v. Savage, 28 Conn. 146; Huntington v. Clark, 39 Conn. 540; Cobb v. Tirrell, 137 Mass. 143; Saul

v. Buck, 72 Ga. 254; O'Brien v. Greenebaum, 92 Cal. 104, 28 Pac. 214; Zell Guano v. Emry, 113 N. C. 85, 18 S. E. 89; Bank v. Hoeber, 88 Mo. 37. See, also, Musgat v. Wybro, 33 Wis. 516; Hefter v. Cahn, 73 Ill. 296; and, under the head "Constructive Fraud," 1 Story, Eq. Jur. § 378. The doctrine and the reasons therefor are well stated in Huntington v. Clark, supra, where it is said, at page 553:

"The rules and principles which govern contracts of compromise between an insolvent debtor and his creditors, whether in the form of 'composition deeds,' as they are usually styled, or otherwise, are very thoroughly established and very generally understood. The utmost good faith must be observed by all parties; any fraud taints and makes void the agreement, however technical or solemn may have been its form or the mode of its execution. This, indeed, may be said of all contracts, but especially of those of this character. The nature of these transactions, and the situation of the parties, afford at once temptation and opportunity for committing fraud. The debtor in his statement is tempted to swell the amount of his liabilities, or lessen the amount of his assets, or both, in order to make a settlement at the lowest figure; and the creditors, though purporting to act together, are found, not rarely, acting individually, and stipulating with the debtor for the payment of their claims, in whole or in part, over and above the amount of their dividend. It scarcely need be said that any misrepresentation or concealment on the part of the insolvent renders his release void; any contract by one creditor for a preference over his fellow creditors is not only void, but, as determined by the later authorities, such contract in effect works a forfeiture of the claim to an otherwise honest dividend. The parties necessarily repose special trust and confidence in each other, and to repress the temptation to abuse or violate that trust and confidence the rule requiring the observance of entire good faith, the 'uberrima fides' of the civilians, should be rigidly enforced."

Nor do any of these authorities discriminate between cases where the preference is secured through an agreement fully executed by payment, and where no payment is made and the secret agreement itself may be adjudged void and nonenforceable. The rule thus laid down is one which commends itself to us. Its adoption will promote fair dealing and strict integrity of action upon the part of creditors when dealing with each other and with unfortunate debtors who are seeking to make a composition settlement upon an honest basis. Such a rule tends to prevent a creditor from decoying others into a com-

position by fraudulent practices and pretended releases upon what seems to be entire equality of payment, and it will also relieve the debtor from being driven into permitting an undue advantage to be taken of him by reason of his necessities. The doctrine contended for by counsel for plaintiff, that the secret agreement only is vitiated by the fraud, although supported by some authorities, does not commend itself to us. If it should be indorsed, a creditor could secure an undue advantage with impunity, for he would take no risk. If the secret agreement was repudiated by the debtor as tainted with fraud, the creditor would still have the full benefit of the composition agreement, and would simply fail to obtain the additional percentage. We cannot encourage and promote bad business morals by the adoption of such a rule of law.

We have stated that authorities may be found to support plaintiff's contention. Counsel have referred to three cases as sustaining their claim that the composition agreement must be upheld notwithstanding a fraud has been perpetrated by the connivance of the debtor himself with one or more of his creditors. One of these cases, Page v. Carter, 16 N. H. 254, decides that a debtor does not forfeit the benefits of a composition with his creditors by secretly paying or promising to pay one of such creditors a sum of money in order to secure the latter's concurrence to the composition. No authorities are cited in support of the position, and those opposed to it are silently ignored. The reasoning seems to be that, as the rule is that the secret agreement can be avoided, to hold

"that the debtor should be charged with complicity in a fraudulent transaction designed to defeat the measures which have been instituted for his relief would be to ingraft upon that rule of law an alien branch that would conflict with its beneficial purposes."[2]

If by this it is intended to lay down the proposition that, as the secret agreement is fraudulent and may be avoided, the balance of the transaction must stand because it is of benefit to the debtor, we think the reasoning extremely faulty. We are not advised of any rule of law or equity which permits any contract tainted with fraud to stand, in whole or in part, because a party to the fraud may be benefited by it. Another case is Bartlett v. Blaine, 83 Ill. 25. There

[2] 16 N. H. 257.

the facts were that a debtor induced a creditor to sign a composition agreement at 50 per cent. by affirmatively representing to him, in writing, that no other person had or should receive more than 50 per cent., directly or indirectly. As a matter of fact, the debtor had already given his note for $500 to induce another creditor to sign the agreement, which note, upon suit thereon, had been adjudged void. It was held that the fraud was insufficient to avoid the composition contract in an action brought by the creditor to recover the balance of his original claim.

The court appears to have treated the cause as an action for fraudulent representations, in which it was incumbent upon the plaintiff to show, not only that the representations were made and were false and fraudulent, but, in addition, that he was injured thereby. It is there argued that the existence of the $500 note in no way prevented the creditor plaintiff from getting the 50 per cent. stipulated for, and, in reply to the claim that by means of active fraud he had been induced to sign the composition, that no attempt had been made to prove that he was any worse off than if he had not signed; particular stress being laid on the fact that the debtor was a bankrupt when the agreement was entered into, with over $60,000 liabilities and about $35,000 of assets. No proof was offered, said the court, to show that the creditor's demand was of any greater value than the 50 per cent. received therefor. By the reasoning of this case the right to disregard the composition agreement is made to depend upon a future determination as to whether or not the creditor imposed upon and deceived has actually suffered a loss. If the debtor could have paid more than he agreed to, and this is shown upon the trial, with proof of the secret agreement, the composition may be avoided; otherwise not.

We are not satisfied with this line of reasoning. And the court, when deciding the case, seems to have overlooked what was said in Hefter v. Cahn, supra, in which it had been stated, at page 301:

"If, then, a secret agreement made with one of the creditors is void, and contrary to public policy, does justice or honesty require that a composition agreement should be binding upon a creditor who is induced to become a party thereto under the belief that all the creditors are to be paid pro rata, when, in fact, one of them has a secret contract from the debtor by which he is to be paid in full, or

have an undue advantage over the others? We cannot give our sanction to a doctrine so unjust as this. When a composition agreement is executed, the debtor professes and holds out to deal with all the creditors who enter into it on terms of perfect equality, when, if at the same time he has a secret agreement with one of the creditors, which gives him an undue advantage, this is a fraud upon the others, and a contract thus obtained cannot be said to be fairly made, but is tainted with fraud, and a fraudulent contract will not support an action, neither can it be made the foundation for a defense."

We now come to the case of Hanover v. Blake, 142 N. Y. 404, 37 N. E. 519, which counsel for plaintiff rely upon with great confidence. Two of the learned justices announced a dissent, without elaboration. The facts were that Blake & Co. entered into composition agreement with their creditors by the terms of which the latter were to receive 40 per cent. in full of their claims, in four notes to each creditor,— two payable in 6 and 12 months, and two in 18 and 24 months; the latter two to be indorsed by Mrs. Blake. The plaintiff bank induced Mrs. Blake to indorse all of the notes made payable to it, thus securing additional security, without the knowledge of the other creditors. The action in question was against Blake & Co. and Mrs. Blake, as indorser upon the third note of the series,—a note which was to be, and had been, indorsed by Mrs. Blake under the terms of the composition agreement. There was nothing in the case indicating what had become of the 6 and 12 month notes which she did indorse outside of the terms of the composition. While it is not directly stated that Mrs. Blake knew the terms and conditions of the composition agreement, and that she was to indorse but two of the notes given to each creditor, we think that by implication it clearly appears in the opinion that she knew all about it, and, if a fraud was perpetrated upon other creditors by plaintiff bank and the debtors, she had knowledge, and was a party thereto. It was held that a recovery could be had on the indorsement. The views of the court are found in the following excerpt from the opinion, at page 414:

"Here the agreement with other creditors for a composition was lawful and valid, (unless they should elect to rescind it upon the discovery of the secret agreement, an element not present); but the agreement for, and the giving of, additional security was unlawful and void. Is there any reason why the bad may not be rejected and

the good retained? If the alternative is, as it presents itself to my mind, that the composition agreement shall stand as a release of the plaintiff's original demand; or that it shall fall and leave the plaintiff at liberty to recover the original debt, I am for upholding it and I fail to see why the legal part of the transactions had with it cannot be severed from the illegal part. We should be careful, in our desire to punish the harsh and unscrupulous creditor, who presses his debtor and bargains for an advantage over other creditors, by deprivation of legal rights and remedies, that we do not go too far and lay down a rule which may result unjustly in other ways. It ought not to be possible that through his fraud he may be reinstated in his original position as a creditor for the whole sum due.

The operation of a secret agreement is such that the other innocent creditors may, because of the fraud of their debtor, elect to refuse to be bound by their agreement of composition with him. If the secret agreement is executory they may not so elect, and may rely that the creditor, secretly seeking to obtain some promise of advantage over them, will be prevented from enforcing it and from gaining anything by his fraud. Its illegality is a perfect defense in the hands of the promisor. The composition agreement is one thing, as an agreement between all the creditors to release some part of the insolvent's indebtedness to them, upon terms equal as to each; and the secret fraudulent agreement with one or more of them is a stipulation, which, from its inception, was unlawful, and which the law annuls."

We cannot reconcile much that is found in this extract with the opening paragraph, where it is conceded that the composition could be rescinded by other creditors upon a discovery of the secret agreement; "an element not present" remarks the court, except upon the theory that Mrs. Blake was a party to the fraud, and hence could not avail herself of the ordinary defense open to an indorser, surety, or guarantor who comes into court with clean hands. We are of the opinion that the case last referred to is not authority upon the question here, even if we concede that a correct conclusion was reached upon the facts there present. And see Solinger v. Earle, 82 N. Y. 393; White v. Kuntz, 107 N. Y. 518, 14 N. E. 423.

As hereinbefore stated, we are convinced that the fraud tainted the entire transaction, to the extent that the composition itself could have been repudiated by the innocent creditor. We are unable to distinguish between the composition and the secret agreement which was the foundation upon which it rested. We cannot concur in any line of reasoning which separates and severs the fraudulent whole

into two parts, one good and to be upheld, the other bad and to be denounced. If fraud vitiates all contracts into which it enters, it has no stopping place in a transaction of this kind, no halfway house beyond which it has no footing. It permeates the composition agreement through and through. With these views of the effect of the secret agreement upon the composition, we are brought to a consideration of the rights of these sureties on the composition notes, and these rights we regard as well settled in this state and elsewhere. The duty of a creditor to a surety is thus stated in Doughty v. Savage, supra, at page 155:

"It is a clear and well-settled principle that a security given by a surety is voidable on the ground of fraud, if there is, with the knowledge or assent of the creditor, such a misrepresentation to, or concealment from the surety, of the transaction between the creditor and his debtor, that, but for the same having taken place, either the suretyship would not have been entered into at all, or being entered into, the extent of the surety's liability might be thereby increased."

A number of cases, are cited in support of this doctrine. It has also been approved in this court recently, in Trader's v. Herber, 67 Minn. 106, 69 N. W. 701. The remaining inquiry is, would knowledge of the existence of the secret agreement have been calculated to materially influence the sureties when determining whether they would enter into their contracts of suretyship on the composition notes? The object of that agreement was to release the debtors from a portion of their indebtedness, and the sureties entered into their contract for this purpose, induced so to do by the representations and belief that the debtors were to be freed and released from any further liability. In this they were deceived, and through the concealment of the plaintiff, payee of the notes, the object was not attained. By reason of the fraud it was within the power of the innocent creditors to ignore the composition, and recover the balance due upon their claims. The ability of the debtors to meet their notes or to indemnify the sureties was hazarded and impaired at once by the contingency. That the extent of the sureties' liability and the risk they had assumed were materially increased, is obvious. The concealment was a fraud upon them, and exonerated them from their obligations.

Order affirmed.

CANTY, J.   While agreeing with the majority in the result arrived at, I cannot concur in the foregoing opinion.   For the purposes of rescission, that opinion treats the composition agreement as a contract solely between the two guilty parties, the debtor and the creditor who entered into the secret agreement.   As to such creditor, it allows the debtor to repudiate the contract and rescind on account of his own fraud, without regard to his contract obligations to other creditors who are also parties to the composition agreement, and who have a right to insist that the debtor shall not repudiate his contract, but shall carry it out.   Of course, if a composition agreement was merely a series of independent agreements, each one solely between the debtor and a single creditor, the debtor could, for fraud, repudiate or rescind the contract between himself and the particular creditor, without regard to his contracts with the other creditors.   But it is elementary that a composition agreement cannot be supported at all on the theory that it is such a contract.   On the contrary, the only consideration for the composition agreement is the collateral consideration furnished by the mutual promises of the creditors each to the others. For this very reason the secret agreement between the debtor and the one creditor is a fraud on the other creditors.   And yet it is held that the guilty debtor may, with the assistance of the court, violate his contract with these innocent creditors because of his fraud upon them when entering into that contract.

In this case the debtor agreed with his innocent creditors that he would never pay plaintiff but 33 1-3 per cent. of its claim, and it agreed with these creditors that it should never receive any more. There are various good and sufficient motives which these innocent creditors might have had for entering into this contract.   Each of them may have regarded it as a case where, at the end of a scramble among creditors, he would get less than he would get under the composition agreement, or he might have desired to protect the good will of the debtor's business for the purpose of future trade with him. But what such creditor's motive was is immaterial.   He is entitled to have his contract carried out.   His contract is that the debtor shall pay the plaintiff 33 1-3 per cent. of its debt, and no more.   But the debtor says:   "Because of my own fraud, I will pay nothing under the contract.   I will rescind the contract, as between me and the plaintiff, and then the plaintiff will be free to recover 100 per cent.

of its claim from me, notwithstanding its solemn agreement with, these other creditors that it should never receive but 33 1-3 per cent." Surely, if this contract is rescinded, the plaintiff must be placed in statu quo, and then it will be in position to recover the whole of its original claim.     These are the absurd results to which the position of the majority leads.

True, that position is supported by considerable authority, but it is nevertheless erroneous.     In those cases the courts overlook three very plain propositions:     First. As a general rule, where a contract is entered into by and between three or more different parties, it cannot be rescinded for fraud unless each and all of the parties can be placed in statu quo. · Second. As a general rule, any party not guilty of fraud may prevent a rescission, and insist that the contract shall stand and be carried out, at least when the consideration is mutual, or the contract is entire and inseparable as between him and any other party as to whom it is proposed to rescind the same.     Getty v. Devlin, 54 N. Y. 403, 414; 5 Wait, Act. & Def. 522; 2 Parsons, Cont. 678. Third.  No exception to either of these general rules should be made in favor of any party who is himself guilty of the very fraud for which it is proposed to rescind the contract, and the contract should not, without the consent of all the innocent parties to it, be rescinded merely for the benefit of such guilty party.     But even where it is not possible to place all parties completely in statu quo, or where some of the innocent creditors refuse to join in a rescission, an action for rescission may, in a proper case, be maintained in equity if proper provisions can be made for protecting the rights of all parties.     See 21 Am. & Eng. Enc. Law, 89.     However, in such a case the action must be brought by a party who comes into court with clean hands.

Applying these principles to the case at bar, I am of the opinion that only the secret agreement can be avoided by the debtor who participated in the fraud, and the composition agreement must stand until it is rescinded by the innocent creditors.     But this does not dispose of the case as to defendant Sederberg, who is a mere surety.     While the composition agreement provides that the plaintiff shall have just such security as has been given him for 33 1-3 per cent., still, if the defendant surety is compelled to pay, he will be subrogated to the rights of the plaintiff, and can proceed to collect what he has paid from the

principal debtor, and therefore it can make no difference to the other creditors whether the principal debtor is compelled to pay the plaintiff or to pay the surety.

Then the stipulation for such security in the composition agreement was made solely for the benefit of the plaintiff, and not for the benefit of the other creditors at all; and they have no right to insist that such stipulation be carried out as to plaintiff, and the defendant surety compelled to perform his contract. As to such surety, the contract can be treated as one solely between him, the plaintiff, and the principal debtor. The secret agreement was a fraud upon such surety. His contract was not what he supposed it was. He became surety pursuant to a fraudulent and voidable agreement, not a valid one. After he had paid the 33 1-3 per cent. for which he had become surety, and before he had reimbursed himself from the principal debtor, the other creditors might, by bill in equity, rescind the composition agreement, and be thereby restored to the full amount of their original claims. This might prejudice and embarrass him. His liability is strictissimi juris.

For these reasons I am of the opinion that there was such misrepresentation to and concealment from the surety that he is entitled to avoid his obligation.