PHILIP H. COYLE *vs.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

Suffolk.    November 11, 1913. — March 3, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Insurance,* Fidelity.   *Bond.*

A bond of fidelity insurance, by which a guaranty company agrees to make good to a so called employer any loss sustained through the fraud or dishonesty of a so called employee, who is described as an agent or collector receiving a commission on accounts assigned to the so called employer, does not cover a misappropriation by the person named as such employee of money collected by him from accounts receivable, which had been due to him from his customers in a printing business carried on by him in his own name and had been assigned by him from time to time to his so called employer on being paid in cash the value of the accounts less from fifteen to eighteen per cent, there having been annual settlements between the parties and the transactions during a period of five years having resulted in an average profit to the so called employer of about one and one half per cent a month, and the so called employee during that period never having received a commission or any other compensation for collecting the assigned accounts.

In the present case, although the transaction between the so called employer and the so called employee could have been found to be a running account by way of loan secured by accounts assigned by the so called employee, yet the jury were not bound as matter of law to find this. Nor could the jury have been instructed that the so called employee had authority to use in his business the money thus collected by him, in which case his failure to account for the sums so collected would not have amounted to embezzlement and would not have been covered by the bond for that reason.

LORING, J. This is an action on a bond by which the defendant fidelity and guaranty company agreed to make good to the plaintiff any and all loss sustained by him through any act of dishonesty on the part of one Mudge, called in the bond an "Employe" of the plaintiff.

The defendant rested on the plaintiff's evidence and asked the presiding judge * to direct a verdict in its favor. This was refused. An exception taken to that ruling is the only exception before us.

We are of opinion that, although the evidence showed acts on the part of Mudge which the jury could have found to be dishonest, they were not committed in the course of the employment described in the bond, and for that reason the ruling asked for should have been given.

The bond begins with a recital that Mudge, "hereinafter called the 'Employe,' has been appointed to the position of Agent and Collector in the service of Philip H. Coyle, hereinafter called the 'Employer,' and has been required to furnish a Bond for his honesty in the performance of his duties in the said position." Then follows a recital that the "employer" has delivered to the defendant "a statement in writing setting forth the nature and character of the office or position to which the Employe has been elected or appointed, the nature and character of his duties and responsibilities . . ., which statement is made a part hereof." The statement in writing thus made a part of the bond is in the form of answers given by the plaintiff to questions propounded to him by the defendant. In these answers the plaintiff stated that "the title" of Mudge's "position" was "agent or collector;" and that a full explanation of his duties was "collection of accounts assigned to me for same," and that he was to receive a "commission or percentage as collected." We construe the words "for same" to mean "for myself." It is stated in this statement in writing signed by the plaintiff that: "It is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuation of the same."

The facts put in evidence by the plaintiff which showed the

* *Hitchcock, J.*

true relation between the plaintiff and Mudge, were in substance as follows: In January, 1906, Mudge was carrying on or was about to carry on the business of a printer on his own account. Being in need of ready money he applied to the plaintiff for assistance. Thereupon the two executed a written agreement by which the plaintiff agreed "to employ said Mudge as collector or agent to collect certain bills assigned to said Coyle, and to pay and allow said Mudge one per cent on all such collections. Said Mudge agrees and accepts the same on above terms, and all collections shall be turned over at once and satisfactory settlement made with said Coyle." This agreement was dated January 12, 1906. The written statement referred to above and made part of the bond was dated January 11, 1906, and the bond itself was dated January 15, 1906. The bond ran for a year and was renewed five times. The course of business pursued by the plaintiff and Mudge (during the five years the bond was in effect before the renewal period here in question) was as follows: On Mudge's assigning to the plaintiff a number of accounts receivable due to him from his customers, he received from the plaintiff the full value of them less some fifteen to eighteen per cent. The accounts due Mudge thus assigned to the plaintiff were then committed by the plaintiff to Mudge for collection. With a single exception no notice of the assignment of any one of these receivables was ever given by the plaintiff or Mudge to Mudge's customers from whom the accounts were due, and the receivables were collected from the customers by Mudge as if no assignment of them had been made. Later on (presumably when the due dates of the assigned accounts had passed), the plaintiff and Mudge had a settlement. The settlements consisted in Mudge's paying the plaintiff "interest and expenses" on the sum paid him (Mudge) in cash when the accounts were assigned by him to the plaintiff; the "interest and expenses" were added to the sum originally paid in cash and that sum was deducted from the amounts collected by Mudge on the assigned accounts. The "balance" so struck was settled in cash or by an assignment to the plaintiff by Mudge of new accounts receivable on which the plaintiff made a new advance, or partly in cash and partly by a new assignment on which a new advance was made. The plaintiff testified that he "received as a profit on such transactions on an average about one and one half

per cent a month." During the five years that the bonds were in effect, before the renewal period here in question Mudge never received a commission or any other compensation for collecting the assigned accounts.

The action now before us was brought to recover reimbursement for Mudge's failure to pay over to the plaintiff $1,297.02, collected by him on accounts assigned to the plaintiff on May 15, 1911. The $1,297.02 was used by Mudge for his own benefit.

We are not able to adopt the defendant's contention that as matter of law the real nature of the transaction between the plaintiff and Mudge was a running account by way of loan secured by the accounts assigned to the plaintiff by Mudge. Doubtless the jury could have found that to be the true relation between the plaintiff and Mudge; but they were not bound as matter of law to do so. For that reason this was not a ground for directing a verdict for the defendant. Neither have we been able to adopt the further contention made by the defendant that as matter of law, on the evidence in the case, Mudge had authority to use the money collected by him in his business, in which case, under the doctrine of *Commonwealth* v. *Stearns,* 2 Met. 343, and *Commonwealth* v. *Libbey,* 11 Met. 64 (for a collection of the later cases see *Commonwealth* v. *Moore,* 166 Mass. 513, 516), his failure to account for the sums collected by him would not have amounted to embezzlement and so would not have come within the terms of the bond.* There was no pretense that Mudge was to collect for several employers, as was the case in *Commonwealth* v. *Libbey, ubi supra.*

But we are of opinion (taking the view of the evidence most favorable to the plaintiff) that the true relation between the plaintiff and Mudge was materially different from that stated in the bond including the written statement signed by the plaintiff referred to in and made part of it. The relation there stated is

---

* The bond was confined to making good and reimbursing "to the Employer all and any pecuniary loss sustained by the Employer, of money, securities or other personal property in the possession of the Employe, or for the possession of which he is responsible, by any act of fraud or dishonesty on the part of said Employe in the discharge of the duties of his office or position as set forth in said statement referred to, amounting to larceny or embezzlement."

that existing in the ordinary case of an "agent or collector" employed to collect accounts assigned to his employer for his (the employer's) benefit, the "agent or collector" receiving for so doing a "commission or percentage" on the accounts as they are collected. There is no suggestion in the bond or in the written statement made part of it that the assigned accounts in the case at bar to be collected by the employee were accounts originally due to the employee and earned by him in the course of a business which he was to continue to carry on on his own account; nor that the "assigned" accounts receivable were to be assigned by the employee to the employer for money paid by the employer to the employee, nor that in the ordinary course of business the employee would not in fact be paid for collecting the assigned accounts. The furthest that the bond and the papers accompanying it go in this connection is a statement in Mudge's application for the bond that in addition to the salary to be paid him as "agent or collector" for the plaintiff he was to have "income from business [he was] now [then] in." The only contingency in which (tested by the course of business pursued by the plaintiff and Mudge during the five years here in question) a commission would have been in fact paid to Mudge for collecting the accounts assigned to the plaintiff was in case no settlement was subsequently made by which Mudge got back from the plaintiff part of the fifteen to eighteen per cent deducted from the face of the assigned accounts when they were assigned to him. And there was no instance during those five years when such a subsequent settlement was not made.

The likelihood of a person in Mudge's position (under the course of business pursued by the plaintiff and Mudge during the five years here in question) misapplying collections is quite different from that in the ordinary case of an "agent or collector" who collects accounts for a "commission or percentage" where the "agent or collector" has no other interest in or relation to the accounts to be collected than his employment to collect them. Under the course of business here in question the accounts to be collected were earned by Mudge in his business. To be sure they had been assigned to the plaintiff and Mudge had received an advance when they were assigned. But judged by the course of business there was an expectation, although no obligation, that

the collections would be settled, in part at least, by a new advance on a new assignment of further receivables. And, as we have said, under the course of business there was to be no payment of a "commission or percentage" to Mudge except in the remote contingency of no such subsequent settlement being made and of the collections made being paid over to the plaintiff, — a thing that in the five years here in question never had taken place. The temptation for Mudge, in case business became even less prosperous, to make what might be thought to be a temporary use of money collected on such receivables under the expectation that the matter would be adjusted at the next settlement on his (Mudge's) procuring a new advance by making an assignment of further receivables, is quite different from the temptation to embezzle collections where the collector is paid a commission, as the collections are made, for making the collections and paying over the sums collected.

No cases have been brought to our attention which are decisive of the case at bar. It has been held in some cases that a fidelity and guaranty company is not entitled to the consideration that an ordinary surety is entitled to. See *Atlantic Trust & Deposit Co.* v. *Laurinburg,* 163 Fed. Rep. 690; *Guaranty Co.* v. *Pressed Brick Co.* 191 U. S. 416, 426. If this be adopted as the measure of the duty owed such a company, this bond in our opinion did not cover the transactions between the plaintiff and Mudge. For somewhat similar cases against sureties, see *Boston Hat Manufactory* v. *Messinger,* 2 Pick. 223; *Griswold* v. *Hazard,* 141 U. S. 260; *Remington Sewing Machine Co.* v. *Kezertee,* 49 Wis. 409; *Barnes* v. *Century Savings Bank,* 149 Iowa, 367; *Jungk* v. *Holbrook,* 15 Utah, 198; *Powers Dry-Goods Co.* v. *Harlin,* 68 Minn. 193; *Pidcock* v. *Bishop,* 3 B. & C. 605.

If Mudge had misapplied collections made by him when acting as an ordinary "agent or collector" of accounts assigned to the plaintiff where the "agent or collector" was to be paid "a commission or percentage" as the accounts were collected, reimbursement could have been obtained by an action on this bond. But the failure to pay over collections which has given rise to this action was not committed in the course of such an employment. It follows that the judge should have directed the jury to return a verdict for the defendant, and the exception taken to his refusal so to do must be sustained.

We are further of opinion that judgment should be entered for the defendant under St. 1909, c. 236; and it is

*So ordered.*

*H. V. Cunningham,* (*A. T. Good* with him,) for the defendant.
*O. E. Dunham,* for the plaintiff.