### BURGESS *v.* SIMPSON GROCERY COMPANY *et al.*

1. If a composition agreement with creditors is induced by the misrepresentation or suppression of any material fact by the debtor in a statement of his affairs, either as to the amount of his property or of his indebtedness, the composition is void.

2. When a composition with creditors has been obtained by the fraudulent conduct of a debtor in the suppression of a material fact in a statement of his affairs, as to the amount of his property or of his indebtedness, an innocent creditor is not required to rescind the composition, or return any sums which may have been received therein, but such sums may be considered as payments pro tanto on the original debt, and suit may be instituted for the balance of the debt.

3. The pleadings and the evidence were of such character as to authorize the order complained of; and the evidence being conflicting, the discretion of the judge in appointing a receiver and granting an injunction will not be interfered with.

Submitted April 20,—Decided May 18, 1907.

Petition for injunction and receiver. Before Judge Wright. Floyd superior court. October 27, 1906.

The Simpson Grocery Company and others filed an equitable petition, alleging, that J. M. Burgess and R. J. Burgess, doing business under the firm name of Burgess & Brother, carried on a mercantile business; that J. M. Burgess represented to plaintiffs and other creditors that the firm was unable to pay its debts in full, stating that they were indebted in various amounts, aggregating about $3,300, and, at the time, executed an agreement which purported to convey to their creditors all of the assets of the firm, as well as the assets of the individuals composing the firm, which were to be received by the creditors in full satisfaction of their indebtedness. In this agreement (a copy of which is attached as an ex-

hibit to the petition) the names of the creditors are enumerated, and certain property is described, which is declared to be all of the property owned by the debtors, and Treadaway is named as trustee to dispose of the property for the benefit of the creditors; and it is provided that if any of the creditors are omitted, they are to share pro rata, notwithstanding their names do not appear in the agreement. It is alleged, that J. M. Burgess represented that his financial embarrassment was due to the fact that he had lost $500 from his pocket while traveling in the country; that the plaintiffs entered into the agreement in the utmost good faith, and the property conveyed was sold at the best price obtainable, and the proceeds divided pro rata among the creditors, who thus received about thirty per cent. of their indebtedness; that immediately after the execution of the agreement, J. M. Burgess requested that all proceedings therein be suspended until he could consult with his father-in-law, Foust, who resided in another county, and that the creditors agreed to this; that Foust arrived before the sale was had, and became the purchaser of the property described in the agreement, and that thereafter J. M. Burgess took charge of the stock of goods, etc., and proceeded to sell the same; and that he executed a mortgage to Foust, which has never been recorded, and plaintiffs do not know whether it was ever delivered. It is averred, that the firm bought more goods than it could possibly sell in the usual course of trade, and that its storehouse would not contain exceeding one thousand to twelve hundred dollars' worth of goods of the usual character carried by retail country merchants; that plaintiffs have learned, within the past few days, for the first time, that a short time before the agreement was entered into with the creditors, goods, etc., of the value of $600, had been carried away from the store and placed in the possession of one Teems, who resided eight or ten miles from the place of business of the firm, in a remote and mountainous section of the county, where few people trade; that J. M. Burgess represented to Teems that he had bought a great many more goods than he could possibly place in his store, and that Teems could have all above the cost that he could get for them, and that he could sell them, paying to the firm the cost price, and holding any goods unsold, subject to the order of the firm; and that J. M. Burgess lately informed Teems that he was ready to take charge of these goods, and instructed him to pack them, to be delivered back to Burgess;

that all of these facts were concealed from the creditors at the time of the execution of the agreement, and no entry of the transaction with Teems was made upon the books of the firm; and that J. M. Burgess took away from the store a large amount of goods, and stored them in his home and kept them concealed from his creditors; which facts have just come to the knowledge of the creditors. It is averred, that the mortgage to Foust was given for the purpose of hindering, delaying, and defrauding creditors; that the money paid for the goods at the sale was the money of the firm; and that Foust was a party to the fraudulent scheme of Burgess; that the statement that Burgess had lost a large sum of money while traveling in the country was false; that Foust had in the store of the firm one of his sons, two months preceding the agreement with the creditors and one month subsequently thereto, for the purpose of assisting the firm in the perpetration of the fraud upon the creditors. It is alleged that J. M. Burgess is insolvent. The prayer of the petition is, that the agreement with the creditors be set aside and cancelled; that the amount received from the sale of the goods be credited upon their indebtedness, and that they have judgment for the balance due, and also have judgment against Foust, and that his mortgage be delivered up and cancelled; that Teems be enjoined from disposing of the goods now in his possession or paying over to the firm or to J. M. Burgess any money now in his hands derived from the sale of the goods delivered to him; that a receiver be appointed; and for general relief. Process was prayed against the members of the firm and Foust, but not against Teems. The judge sanctioned the petition and directed that copies of it be served upon the defendants and upon Teems, and restrained each of them from disposing of the property in the hands of either of them, and appointed a temporary receiver to take charge of the firm's assets.

The defendants filed a demurrer, in which they alleged, that no cause of action was set forth; that there was a misjoinder of causes of action, in that a common-law judgment against the defendant for fraud and deceit, as well as the cancellation of the written contract, was sought; that there was no offer to return the amounts which the plaintiffs had received under the agreement; that the property referred to therein is not sufficiently described; that there was a misjoinder of parties plaintiff as well as of parties defendant; that the petition was multifarious; and that all of the creditors were not

made parties to the case.   J. M. Burgess filed an answer, in which
he denied all of the allegations of fraud and misrepresentation;
averring that he had acted in perfect good faith, and that his state-
ments in reference to his financial condition were true, and that the
mortgage to Foust was given in good faith, for money actually paid
by him for the purchase of the goods at the sale.   He denied that
he had bought any more goods than was usual (with the exception
of a few more shoes), and admitted that he had turned over to
Teems certain goods, agreeing that he might have the profit on the
sale, but that those unsold were to be paid for on demand or re-
turned.   He denied that he concealed these facts from the plain-
tiffs, and alleged that the transaction with Teems was charged on the
books of the firm.   Foust filed an answer, in which he averred, that
the transaction, so far as he was connected with it, was in the ut-
most good faith; that he paid the amount of his bid at the sale
and took charge of the property, taking a mortgage from Burgess
to secure him for the purchase-money; that the money he paid for
the goods was his own money, brought with him from his home,
and that Burgess had no interest whatever therein.   Teems filed no
answer, and seems to have made no objection to the order, so far as
it affected him.   At the hearing he testified, by affidavit, that J.
M. Burgess proposed to turn over to him a part of his stock of goods,
and that he told Burgess his store was in a remote section and his
trade was limited, and he could not sell the goods as rapidly as Bur-
gess; that Burgess insisted, stating that he was overstocked, had
more goods than his store would contain, and that deponent could
have all over the cost that he sold the goods for, but that the goods
should be subject to the order of Burgess in the event that the latter
should decide to take them back at any time; that he finally agreed
to take the goods and received two wagon-loads, of the value of
about $600; that he sold a small portion of the goods for $89.87,
and now has on hand $37.41, and that he is ready to turn that
amount, as well as the unsold goods, over to such person as the court
may direct; that he has recently received a letter from Burgess that
he wanted the goods returned to him, and to pack them up; and
deponent has packed up the greater portion of them, ready for de-
livery.   Other evidence was introduced at the hearing, by the plain-
tiffs and the defendants.

The judge appointed a receiver to take charge of all of the goods

in the possession of Teems, delivered to him prior to the date of the agreement between Burgess & Brother and their creditors, and ordered the members of the firm to surrender to the receiver the proceeds of the goods sold by Teems which had been turned over to J. M. Burgess, and also required them to turn over to the receiver any goods that Teems had delivered to Burgess since the date above referred to, or their value. Except as to the property above referred to, the application for injunction and receiver was denied. In the order the court directed that the cost of the hearing be taxed against J. M. Burgess; and judgment was entered for the same, as well as for the amount awarded as compensation to the temporary receiver. J. M. Burgess excepted to this order, and assigns it as error, as being contrary to law and against the principles of justice and equity; as being unauthorized by the pleadings and the evidence, because there was no reason for the receiver, as Treadaway, the trustee, under the agreement of the creditors, was entitled to the possession of the goods; that the reasons set up in the demurrer were sufficient to defeat the application for injunction and receiver in its entirety; and that that part of the order which taxed the cost of the hearing and the compensation of the temporary receiver against J. M. Burgess was unauthorized by the evidence, and, even if authorized, was premature, the court having no authority to render final judgment, nor to render any judgment for costs until a final judgment in the case.

*George A. H. Harris & Son,* for plaintiff in error.

*Lipscomb & Willingham,* contra.

COBB, P. J. (After stating the facts.)

1. Adjustments of controversies between parties are favored by the law, and compromises, when founded upon a sufficient consideration, will generally be upheld. A debtor, however, must deal in the utmost good faith with his creditors; and while a composition with creditors is not only allowed but favored, if the debtor misrepresents or suppresses any material fact in the statement of his affairs, either as to the amount of his property, or of his indebtedness, the composition is void. Civil Code, §2692; *Saul* v. *Buck,* 72 *Ga.* 254; 8 Cyc. 463; 6 Amer. & Eng. Enc. of Law (2d ed.), 392.

2. When a composition of creditors is rendered void as the result of the fraudulent conduct of the debtor, the creditors may ignore the composition and bring action against the creditor for the

amount of the original indebtedness. It is not necessary to the institution of the action that there should be a return of the amount received under the composition agreement; the creditors being allowed to credit the amount so received and bring suit for the balance due. Cobb *v.* Tirrell, 137 Mass. 143; Cobb *v.* Fogg, 166 Mass. 466; Stuart *v.* Blum, 28 Penn. St. 225; Hefter *v.* Cahn, 73 Ill. 296; 8 Cyc. 476; 6 Amer. & Eng. En. of Law (2d ed.), 392; *Lewin* v. *Thurber, 62 Ga.* 25.

3. While creditors who have been injured by a composition agreement brought about by the fraud of the debtor may attack the composition at law and show it to be void, they may also sue in equity to set aside the composition. 8 Cyc. 477. The creditors may certainly proceed in equity in those cases where the remedy at law is incomplete and inadequate. Those of the creditors who desire to take advantage of the fraud perpetrated upon them may unite in an equitable petition, having for its purpose the cancellation of the agreement and the subjection to their claims of the assets wrongfully withheld by the debtor; and the mere fact that other creditors are content with the amount received under the composition agreement, and do not desire to incur the expense of litigation necessary to reach the assets wrongfully withheld by the debtor, furnishes no reason why those who desire to subject these assets can not unite in equity and obtain a decree for that purpose. In a suit brought by creditors to cancel a composition agreement, the court may grant the relief prayed for, enter judgment in their favor for the amount due them, and require the assets brought in appropriated to the payment of their claim. We think the averments of the petition were of such character as to authorize the order complained of, and the reasons stated in the demurrer as cause against the granting of the injunction and receiver were not well taken. The evidence was conflicting as to many material points, and we will not control the discretion of the judge in reference to the matter.

In the order appointing the receiver the court directed that the costs of the interlocutory hearing and the compensation of the temporary receiver should be paid by J. M. Burgess, and entered judgment to that effect. Error is assigned upon this portion of the order, for two reasons: (1) that the evidence did not authorize the judgment directing J. M. Burgess to pay such costs; and (2) that the judgment was prematurely entered. This portion of the

order is merely an interlocutory decision, and it is not so connected with the judgment appointing the receiver and granting the injunction as that it could be properly brought to this court by a fast writ of error.    *Judgment affirmed. All the Justices concur.*